Fourth National Bank of the City of New York, Respondent, *v.* Joseph S. Spinney et al., Appellants.

Upon appointment of C. as bookkeeper of defendant, he executed to it an instrument in writing, not under seal, with sureties, which, after reciting such appointment, contained the condition that C. "shall well and truly and faithfully perform the duties assigned to and trusts reposed in him as bookkeeper so long as he shall continue in that capacity, or if" he "shall be appointed to any other office, duty or employment by the president and directors of the said bank, he shall also faithfully perform the duties assigned to and trusts reposed in him, and also all

such other duties as may from time to time be assigned to or undertaken by him in relation to said bank." C. converted to his own use certain moneys and securities belonging to plaintiff. In an action upon the instrument, it appeared that C. performed other duties than those of bookkeeper, such as assisting the cashier, acting as loan clerk, and receiving and exchanging securities; that his salary was: raised and his designation on the pay-roll was changed from " bookkeeper to cashier's clerk." *Held* (PARKER, J., dissenting), that assuming C., during the period when he converted plaintiff's property, was not a bookkeeper, but was holding another office, *i. e.*, that of loan clerk or assistant cashier, the sureties were liable.

*N. M. B. Assn.* v. *Conkling* (90 N. Y. 116), distinguished.

Reported below, 47 Hun, 293.

(Argued April 17, 1890; decided June 17, 1890.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 23, 1888, which affirmed a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion by the defendants for a new trial.

This action was founded upon a written obligation, of which the following is a copy :

" Know all men by these presents : That we, Richard H. Cornwell, Joseph S. Spinney and Stephen Crowell, all of the city of Brooklyn, are held and firmly bound unto the Fourth National Bank of the city of New York, in the sum of $5,000, current money of the United States of America, to which payment well and truly to be made, we bind ourselves jointly and severally; and each of our heirs, executors, administrators, firmly by these presents. Sealed with our seals, and dated this seventeenth day of May, in the year of our Lord one thousand eight hundred and sixty-nine.

" Whereas, Richard H. Cornwell has been appointed a bookkeeper of the said bank ; now, the condition of this obligation is such, that if the above named Richard H. Cornwell shall well and truly, and faithfully perform the duties assigned to and trusts reposed in him as bookkeeper, so long as he shall continue in that capacity ; or, if the said Richard H. Cornwell shall be appointed to any other office, duty or employment by

the president and directors of the said bank, he shall also faithfully perform the duties assigned to and trusts reposed in him, and also all such other duties as may from time to time be assigned to or undertaken by him in relation to said bank, then this obligation to be void and of no effect, otherwise to remain in full force and virtue.

> "(Signed)          R. H. CORNWELL.          [L. S.]
>                    "JOS. S. SPINNEY.          [L. S.]
>                    "STEPHEN CROWELL.          [L. S.]"

Opposite each signature was a scroll containing the letters "L. S.," but no seal.

The complaint alleged that the condition of this instrument had been broken by Cornwell, and it appeared from the evidence that he had converted to his own use certain moneys and securities of the plaintiff that had been received by him in the course of his employment.

The answer, after various qualified denials, denies any breach by Cornwell of said condition while he was bookkeeper of the plaintiff.

Upon the trial evidence was given tending to show that Cornwell performed duties other than those of a bookkeeper for the bank, such as assisting the cashier, acting as loan clerk and receiving and exchanging securities. It also appeared that his salary was raised from $1,200 to $1,500, and that his designation on the pay-roll was changed from "bookkeeper to cashier's clerk."

The defendants offered to show the nature of the duties of a bookkeeper in a bank, as distinguished from those of a loan clerk or assistant to the cashier; that the sureties were ignorant of their principal's duties; that ordinary bookkeepers did not have access to the negotiable securities of a bank, and the common acceptation of bankers as to the duties of their bookkeepers, but the evidence was mainly excluded, and the defendants excepted.

*George A. Black* for appellants. Consideration is necessary upon a guaranty as well as any other contract. (*Evansville*

*N. Bank* v. *Kaufmann,* 93 N. Y. 278; *Vanderbilt* v. *Schreyer,* 91 id. 399, 401; *Post* v. *Doremus,* 60 id. 371; *Mittnacht* v. *Kellerman,* 105 id. 467; *Parker* v. *Bradley,* 2 Hill, 584; *Comstock* v. *Smith,* 7 Johns. 87; *Frear* v. *Hardenbergh,* 5 id. 272.) The liability of the defendants upon the bond depends upon its construction, and the rules of law applicable to sureties require that it should be strictly construed. (*McCluskey* v. *Cromwell,* 11 N. Y. 598; *E. N. Bank* v. *Kaufmann,* 93 id. 281; *N. M. B. Assn.* v. *Conkling,* 90 id. 117; 24 N. Y. 496.) The expressions "other offices," "other duties," contained in the condition of the bond must receive the restricted interpretation contended for, not only on the grounds that the sureties had in view the capacity and ability of Mr. Cromwell to perform the duties of bookkeeper only, but as well on the ground that the rules of interpretation require such restriction. (Anderson's Dict. of Law, 740; *Moses* v. *S. M. Ins. Co.,* 1 Duer, 159; *Ins. Co.* v. *Hamilton,* 12 App. Cas. 498; *Halsey* v. *Whitney,* 4 Mason, 227; *Jackson* v. *Stackhouse,* 1 Cow. 126; *Harlow* v. *Tufts,* 4 Cush. 453; *Town of Duanesburgh* v. *Jenkins,* 40 Barb. 584; *Knowlton* v. *Benton,* 11 Abb. [N. C.] 419; *Sims* v. *U. S. T. Co.,* 103 N. Y. 478; *Chegary* v. *Mayor, etc.,* 13 id. 220; *N. M. B. Assn.* v. *Conkling,* 24 Hun, 498.) The change of salary and position of the principal discharged the sureties. (*N. R. R. Co.* v. *Whinnay,* 26 Eng. L. & E. 488; *Mumford* v. *M. & C. R. R. Co.,* 2 Lea. 393; *People* v. *Vilas,* 36 N. Y. 459; *Bagley* v. *Clark,* 7 Bosw. 94; *G. Bank* v. *Kingman,* 16 Gray, 473; *F. Bank* v. *Cooper,* 36 Me. 180; *Dougherty* v. *Savage,* 26 Conn. 156.) The Revised Statutes require that a seal shall be a wafer or wax. (2 R. S. 404, § 62; *Tiffany* v. *Lord,* 65 N. Y. 311; *State* v. *Thomas,* 49 Mo. 188.)

*David Wilcox* for respondent. The defendants are estopped from questioning that Cornwell's position was that of bookkeeper. (*Coleman* v. *Bean,* 1 Abb. Ct. App. Dec. 394; *Decker* v. *Judson,* 16 N. Y. 439; *Fake* v. *Whipple,* 39 Barb. 339; *Cocks* v. *Barker,* 49 N. Y. 107; *Harrison* v. *Wilkins,*

69 id. 412; *Bruce* v. *United States*, 17 How. [U. S.] 437; *Lee* v. *Clark*, 1 Hill, 56; *Bostwick* v. *Goetzel*, 57 N. Y. 582; *Jarvis* v. *Sewell*, 40 Barb. 449.) The ignorance of defendants regarding the extent of Cornwell's duties was immaterial, (*W. Ins. Co.* v. *Clinton*, 66 N. Y. 326; *H. M. Co.* v. *Farrington*, 82 id. 121; *People* v. *Lee*, 104 id. 441, 450; *Ham* v. *Greve*, 34 Ind. 18; *Sebastian* v. *Johnson*, 2 Duval, 101; *Hamilton* v. *Watson*, 12 Cl. & F. 109; *Wyther* v. *Labouchere*, 3 DeG. & J. 593; *N. B. Ins. Co.* v. *Lloyd*, 10 Exch. 523; *Pledge* v. *Buss*, Johns. Eng. 663; *Spencer* v. *Handley*, 4 M. & G. 414; 2 Am. & Eng. Corp. Cas. 411.) The acts of conversion proved were within the penalty of the bond. (*R. Bk.* v. *Elwood*, 21 N. Y. 88; *Barrington* v. *Bank of Wash.*, 14 S. & R. 405; *Mayor, etc.*, v. *Kelly*, 98 N. Y. 467; *R. Bk.* v. *Carleton*, 136 Mass. 226; *Freeman* v. *Haw*, 8 Cent. L. J. 198; *Melville* v. *Doidge*, 6 C. B. 450.) There was no failure of proof because the instrument sued upon had no seals affixed. (*Page* v. *People*, 6 Park. 683; Code, § 541.) The consideration of the bond was not the making of the appointment, but the continuation of the employment. (*R. Bk.* v. *Elwood*, 21 N. Y. 88; *Mayor, etc.*, v. *Kelly*, 98 id. 467, 473; *E. C. S. Bk.* v. *Coit*, 104 id. 532; *Gates* v. *McKee*, 13 id. 232; *Ryde* v. *Curtis*, 8 D. & R. 62; *Kennaway* v. *Treleaven*, 5 M. & W. 498; De Golyar on Guaranties, *25; Brandt on Sureties, § 70.)

Vann, J. The question whether Cornwell ceased to be a bookkeeper while he was employed by the bank was submitted to the jury, who were instructed that if he was virtually removed from that position and promoted to another, which increased the liability of the defendants as his sureties, the plaintiff could not recover; but that if he was continued as a bookkeeper all the time, even if other duties were superadded, the defendants were liable. It is now insisted that the evidence received sufficiently established, and, with the evidence excluded, would have conclusively established that Cornwell, during the period when he converted the property of the bank, was not a bookkeeper, but a loan clerk or assistant

cashier. Assuming that this position is correct, the question is raised whether the condition of said obligation permitted the appointment of Cornwell to another office in the bank without affecting the liability of the sureties.

The main reliance of the defendants in contending that they were discharged by the appointment of their principal to a higher office is the case of *N. M. B. Assn.* v. *Conkling* (90 N. Y. 116), but we think that there is a controlling distinction between that case and the one now before us. The recital of the bond in the *Conkling Case*, and also the condition, when strictly construed, relate to the duties of a bookkeeper. No appointment to another office was in contemplation, but simply a temporary assignment to additional duties.

The court said : " There are no words binding the sureties in case of the appointment of their principal to any other office. \* \* \* This is a case where the general words subsequently used must be controlled and limited by the recital." The general words relating to the assignment to the duties of " any other office, trust or employment relating to the business " are joined to the specific words, relating to the duties of a bookkeeper, by the word " and," indicating connection therewith, and, when the context is considered and the rule as to strict construction applied, subordination thereto. Hence the guaranty was held to relate wholly to the duties of a bookkeeper, because the general words of the condition were limited by the recital. But in this case the condition, instead of being united by the word " and," is divided by the word " or," and the second portion is as specific as the first. The part which immediately follows the disjunctive particle indicating an alternative, applies to the contingency of a new appointment to a distinct office. This is emphasized by the use of the word " also " in connection with the covenant for faithful performance. The condition thus becomes disjunctive, instead of conjunctive, as in the *Conkling Case*, and the recital, assuming that there was but one, neither applies to nor controls the alternative clause. In this way only can due effect be given to the intention of the parties, who clearly contemplated a new

appointment to another office, and distinctly provided for it.
The entire condition, including the recital, is but a single sen-
tence.   By the alternative form of the condition the sureties
undertake that their principal shall faithfully perform his
duties as bookkeeper, to which position *he has been appointed,*
"so long as he shall continue in that capacity; or if" their
said principal " *shall be appointed* to any other office, duty or
employment   *   *   *   he shall *also* faithfully perform " the
duties of that position.   Then follows a general clause relating
to " such other duties as may from time to time be assigned "
to him.   Thus the obligors had in view, according to the
language used by them, that the principal might serve the
obligee in more than one capacity.   The second branch of
the alternative clause distinctly provides for that event, and
the expression " or if the said Richard H. Cornwell shall
be appointed to any other office " may properly be regarded
as a further recital.   While the first recital relates to what
has been done, the second relates to what may be done, and
the contingent appointment is as carefully provided for as
the actual appointment.   There are two distinct conditions, the
one providing for an accomplished fact and the other for a
contingency.   Neither can be disregarded without perverting
the intention of the parties.   Unless this construction is given
to the instrument, its effect will be the same as if the alterna
tive clause had been omitted, yet both clauses are equally the
words of the obligors, who express their intention to answer
for their principal as much by the one as by the other.   Thus,
as was said by one of the learned judges of the General Term,
" the case is brought directly within the reasoning of the "
*Conkling Case.*   We think that the condition of the obli-
gation was broken, even if the principal was appointed to
another office and that the evidence excluded was, therefore,
immaterial.

As bearing generally upon the liability of the defendants
and illustrating the subject already discussed, see *R. C. Bank*
v. *Elwood* (21 N. Y. 88); *N. Y. L. Ins. Co.* v. *Clinton* (66
id. 326); *H. M. Co.* v. *Farrington* (82 id. 121).

The consideration for the instrument is found in the continuous employment of the principal by the bank, which was clearly within the contemplation of the parties, as their written words show. He was employed in the first instance as a bookkeeper, and then, as it is claimed, in another capacity, and both positions were recognized and provided for.

After examining all of the exceptions that appear in the record, we think that the learned trial judge committed no error that is available to the defendants, and that the judgment should be affirmed.

Parker, J. (dissenting). We are agreed that unless the sureties are liable for the misappropriation of their principal while permanently holding some other or higher office in the employment of the plaintiff than that of bookkeeper, then the judgment should be reversed, because of the failure of the trial court to receive testimony pertinent and material upon the question as to whether Cornwell had been thus permanently employed. The evidence excluded under defendants' exception, bearing upon that question, is sufficiently pointed out in the dissenting opinion at General Term. But the majority of this court are of the opinion that the undertaking in question is broad enough to render the sureties liable for the default of their principal, whether committed while holding the office of bookkeeper, to which he had been appointed at the time of its execution, or while occupying, by appointment of the plaintiff, any other or higher office connected with the conduct of its banking business. I am led to dissent from such decision because impressed with the view that it is not only not in accordance with, but in contravention of the decision of this court in *N. M. B. Assn.* v. *Conkling* (90 N. Y. 116). In that case the recital in the bond asserted that the principal had been appointed to the office of bookkeeper, and the condition which followed provided, among other things, that he should "also faithfully fulfill and discharge the duties of any other office, trust or employment relating to the business of such association which

may be assigned to him or which he shall undertake to perform." Subsequently he was permanently assigned to the office of teller, and, while engaged in the performance of its duties, was guilty of misconduct which resulted in the prosecution of an action against his sureties. The court held that : " The recital in the condition of the bond shows that Joseph had been appointed to the office of bookkeeper; that he had accepted that office and consented to perform the duties thereof. That was the office brought to the attention of the sureties and which they had in mind when they executed the bond. The recital in such bonds, undertaking to express the precise intent of the parties, controls the condition or obligation which follows, and does not allow it any operation more extensive than the recital which is its key, and so it has been held in many cases." The applicability of that case to the one under review will more clearly appear from a statement of the two obligations in appropriate subdivisions. In the *Conkling Case* the recital is : " Whereas, The above named, the Mechanics' Banking Association, have appointed the above-named Joseph C. Conkling to the office of a bookkeeper of the said association, and the said Joseph C. Conkling hath accepted the same and consented to perform the duties thereof;" and, in this case : " Whereas, Richard H. Cornwell has been appointed a bookkeeper of said bank." In the *Conkling Case* the condition is : " Now, the condition of this obligation is such that if the above-named Joseph C. Conkling shall faithfully fulfill and discharge the duties committed to and the trusts reposed in him as such bookkeeper " — and as to any other office the condition continues — " and shall also faithfully fulfill and discharge the duties of any other office, trust or emplyment relating to the business of the said association which may be assigned to him, or which he shall undertake to perform." In this case the condition is : " Now, the condition of this obligation is such that if the above-named Richard H. Cornwell shall well, truly and faithfully perform the duties assigned to and trust reposed in him as bookkeeper so long as he shall continue in that capacity " — and

as to any other office the condition continues — " or° if the said Richard H. Cornwell shall be appointed to any other office, duty or employment by the president and directors of said bank, he shall also faithfully perform the duties assigned to and trust reposed in him, and also such other duties as may from time to time be assigned to or undertaken by him in relation to said bank." Now it is urged that the condition of this obligation, so far as it relates to the permanent employment of the principal in some other office, is broader and more comprehensive than the condition in such respect in the *Conkling Case*, and for that reason it is said that the *Conkling Case* does not necessarily control the disposition of this action. An opportunity would perhaps be presented for such an argument if the *Conkling Case* had been disposed of on the ground that so much cf the condition as relates to any other office or employment was not broad enough to include the position to which the bookkeeper had been assigned. But such was not the point of that decision. The court did not hold or suggest that the terms of the condition were not sufficiently comprehensive to include the conduct of the principal in other positions. On the contrary, the argument proceeds upon the theory that the condition may have been broad enough but for the restraining effect of the recital. The court, denying liability on the part of the sureties because to the condition, cannot be allowed any operation more extensive than the recital which it follows, and which is its key.

It is true in that portion of the opinion which immediately follows the discussion of the cases limiting the condition or obligation to the scope of the recital, it is said in substance that the sureties undertook for the fidelity of their principal only while he was bookkeeper, but if, while acting in that capacity, any other duty, trust or employment relating to the business of the bank should be temporarily assigned to him, the obligation also extended to the discharge of those duties. And it is suggested that these remarks, together with such as immediately follow, indicate that the court regarded the condition as failing to embrace in terms the office in question. I

do not so understand them. On the contrary, it seems very clear that their use was to explain that other temporary employment was embraced within the recital, but not other permanent employment, and that, therefore, the condition should be limited accordingly. This will readily appear from a brief reference to the method adopted by the learned judge in stating the reasons leading to the conclusions of the court. He demonstrated, first, that the condition cannot be given an effect more extensive than the recital which it follows; second, the scope of the recital; and, third, that inasmuch as the office in question was not embraced within the recital, the condition must be likewise limited, notwithstanding its terms.

It will be observed that, in stating what was included within the recital, he mentioned any other trust or employment relating to the business of the bank to which the plaintiff should be temporarily assigned while occupying the position of bookkeeper. And in so doing he but stated what the courts had previously held to be embraced within the undertaking of sureties upon bonds containing no provision whatever as to the assignment of the principal to the discharge of the duties of any other trust or employment. It had been so determined in cases cited by the learned judge, notably in *R. C. Bank* v. *Elwood* (21 N. Y. 88). He thus announced that which had been judicially determined to be embraced within the recital. And as the recital did not include permanent employment in another position, it necessarily operated to so limit the effect of the condition as to relieve the sureties from liability. If the view which I have taken of the decision referred to be correct, it follows that the judgment should be reversed.

All concur with Vann, J., except Parker, J., dissenting. Judgment affirmed.