LEWIS and BRADLEY, JJ., concurred; WARD, J., not sitting.

Judgment so amended as to award costs of the action to the plaintiff, and, as so amended, affirmed, without costs of this appeal to either party.

JOHN H. WILSON, Plaintiff, *v.* CHARLES WHITMORE and Others, Defendants.

*Municipal corporation — provisions in a city charter protecting parties furnishing labor or materials to contractors — liability of sureties on a contractor's bond, not limited by the recitals — indulgence does not discharge sureties.*

The Legislature has power to incorporate into the charter of a city provisions which will protect the municipality in making contracts, and it may go farther and provide a means by which all other persons connected with the contract, as for example employees and materialmen, may be protected in their right to payment for work done and materials furnished by them in reference to a contract made for a city improvement.

In an action brought against the sureties upon a bond given by Whitmore & Sheldon (contractors) to the city of Lockport, pursuant to a requirement of its charter, it appeared that Whitmore & Sheldon had been awarded a contract to grade, pave and curb a portion of a street; that they executed the bond in question as principal, and that the defendants (the only persons defending the action) executed the same as sureties; that the recital of the bond stated that Whitmore & Sheldon had entered into a contract with the city by which they had, *among other things*, covenanted and agreed to grade, curb and pave the street.

The condition of the bond required the faithful performance of the contract by Whitmore & Sheldon, and also that they should "pay or cause to be paid the wages and compensation of all laborers who shall be employed in work on or about said improvement, whether employed by the parties of the second part or any sub-contractor or employee, and for all materials furnished in or about said improvement, whether to the parties of the second part or to any sub-contractor."

The plaintiff furnished materials, but was paid only in part. Whitmore & Sheldon completed the work, which was accepted, and ninety-nine per cent of the contract price was paid to them before the commencement of this action,

which.was brought against the principals and sureties upon such bond for the balance due the plaintiff.

*Held,* that the Legislature had power to require such a bond to be given;

That it was a valid measure for the protection of a materialman who might maintain an action in his own name for the enforcement of his rights;

That, although the recital of the bond did not contain a specific reference to the covenant to pay for materials, the general words subsequently used in the bond relative to that matter were not limited by the recital; that, under the circumstances, it was the duty of the sureties to inform themselves as to the measure of their liability by an examination of the bond as an entirety;

That the fact that, when the contractors purchased the sand in question, the plaintiff gave a credit of thirty days, did not discharge the sureties under the rule that a surety may insist upon a strict construction of the contract fixing his liability; that such a transaction was more a mere indulgence than an extension of a credit; was not evidenced by any new contract, and was insufficient to release the sureties from their liability upon the bond.

MOTION by the plaintiff, John H. Wilson, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon a dismissal of the complaint directed by the court after a trial before the court and a jury at the Niagara Circuit on the 11th day of February, 1895.

In 1893 the common council of the city of Lockport adopted an ordinance which provided for the grading, paving and curbing of a portion of Niagara street in that city, and advertised for proposals for the work. Thereafter the contract for such work was awarded to the defendants Whitmore & Sheldon, and the same was reduced to proper form and duly executed by such firm and the city. Cotemporaneous with the execution of the contract, and in pursuance of the requirements of section 207 of the city charter (Chap. 120 of the Laws of 1886), the defendants Whitmore & Sheldon, as principals, and the defendants Webber and Trevor, as sureties, executed and delivered their bond to the city, which bond was subsequently approved by the mayor and filed in the city clerk's office, as required by law. This bond was conditioned, among other things, for the faithful performance of the contract by such principals, " in accordance with the ordinance, plans and specifications for said improvement," and also that the defendants Whitmore & Sheldon should " pay or cause to be paid the wages and compensation of all laborers who shall be employed in work on or about said improvement, whether employed

by the parties of the second part or any sub-contractor or employee, *and for all materials furnished in or about said improvement, whether to the parties of the second part or to any sub-contractor.*"

After the making of the contract and the execution and delivery of the bond, the plaintiff sold and delivered to the defendants Whitmore & Sheldon 1,200 yards of sand at the agreed price of $610, which sand was actually used in the construction of the work mentioned in the contract, and was so sold upon the agreement of the purchasers to pay for the same within thirty days after its delivery, but only $110 of the purchase price was paid by them. The defendants Whitmore & Sheldon completed the work undertaken by them; the same was accepted by the city, and ninety-nine per cent of the contract price was paid prior to the commencement of this action.

The plaintiff notified the defendants Webber and Trevor of the failure of Whitmore & Sheldon to pay the amount due him for the sand, and, within one year after the same was so sold and delivered, demanded of them that they pay the balance of $500, which they refused to do, whereupon this action was brought.

Upon the trial at the Niagara Circuit, the plaintiff established the facts above stated, and rested his case, whereupon the defendants moved for a dismissal of the complaint, which motion was duly granted by the court.

*Tice & Vicary,* for the plaintiff.

*W. H. & F. A. Ransom,* for the defendant Trevor.

*Edward C. Hart,* for the defendant Webber.

ADAMS, J. :

The learned trial justice appears to have dismissed the plaintiff's complaint solely upon the ground that the bond, upon which this action is brought, furnished the plaintiff with no cause of action against the sureties Webber and Trevor, who are the only parties defending. It is true that this instrument runs to the city, and that the plaintiff is neither a party to it nor mentioned in it, but the action was brought and is sought to be maintained upon the theory that the bond, nevertheless, does indemnify him for the purchase

price of sand sold and delivered to Whitmore & Sheldon, the principal obligors. This contention must, of course, rest upon some legislative enactment, for it seems to be now settled that at common law an obligation, to which a person is neither a party nor a privy, generally furnishes no protection or security to that person. (*Gifford* v. *Corrigan*, 117 N. Y. 257; *Townsend* v. *Rackham*, 143 id. 516.) From the evidence in this case, it appears that the charter of the city of Lockport does contain a provision which requires that, before letting any contract for a public improvement, the contractor shall furnish a bond, conditioned for the payment of all claims for " materials furnished in or about such improvement." (Laws of 1886, chap. 120, § 207.) The parties to the bond, it will be observed, undertake to indemnify the city for a faithful fulfillment of the contract in accordance with its terms and provisions, but they go farther than this, and agree in language almost identical with that of the charter, that the contractors shall pay for all materials "furnished in or about said improvement;" and the important question which at once presents itself is, to whom does this particular indemnity run, and for whose benefit was it incorporated into the body of the instrument? The answer to this question depends entirely upon the construction to be given to the language of the bond.

As has already been suggested, the instrument does, in general terms, run to the city, but why should it indemnify the city for materials which are not furnished by the municipality, and for which it could, under no conceivable circumstances, be compelled to pay? It is true that what is termed the "Municipal Lien Law" furnishes materialmen with an easy method by which moneys due upon a contract for municipal improvements can be reached and applied in payment of their claims (Laws of 1878, chap. 315, § 1); but, in availing himself of its provisions, the materialman does not prejudice the municipality in any sense, and, therefore, it is difficult to see how the latter obtains any additional security or protection by having such a provision incorporated into the bond; and if this be so, then the bond must be construed to mean precisely what it says, viz., that the obligors therein named shall pay, or cause to be paid, the vendors and not the city " for all materials furnished in or about said improvement," thereby furnishing the direct indemnity

to such vendors which is contemplated and required by the charter. And herein consists the vital distinction between this case and that of *The Buffalo Cement Co.* v. *McNaughton*, recently decided by this court and reported in 35 N. Y. Supp. 453.

Having reached the conclusion that the bond is sufficiently comprehensive to embrace the plaintiff's claim, and that it is sanctioned by legislative enactment, it remains to· be determined whether the Legislature has exceeded its power in its effort to furnish a remedy which had no existence at·common law.

So far as the city of Lockport is concerned there can, of course, be no question as to the right and duty of the law-making department of the State to incorporate into the charter, which is its fundamental law, such provisions as will adequately protect the municipality itself as a minor division of the State ; but I think it may go much further than that and provide a means by which the individual members of the municipality and all other persons may be protected in their rights. The very "Municipal Lien Law," to· which reference has already been made, is an instance in point where to a certain class of men is furnished an easy and inexpensive method for the recovery of their just claims, which was not available to them prior to its enactment, and the means provided by the Lockport charter is simply more direct and easy of attainment. Perhaps the most radical legislative innovation of common·law rights is what is known as the "Civil Damage Act" (Chap. 646 of the Laws of 1873), which creates a right of action never before heard of in this State, and yet the Court of Appeals had no difficulty in reaching the conclusion that its enactment was a valid exercise of legislative power, and in the consideration of questions arising under that act took occasion to say that " the Legislature may alter or repeal the common law. It may create new offenses, enlarge the scope of civil remedies and fasten responsibility for injuries upon persons against whom the common law gives no remedy." (Opinion per ANDREWS, J., in *Bertholf* v. *O'Reilly*, 74 N. Y. 509–524.)

It would seem, therefore, that when it incorporated the provisions of section 207 into the charter of the city of Lockport, the Legislature not only did not transcend the limits of its authority, but that it provided an easy, suitable and inexpensive method by

which a certain class of creditors could obtain their pay of a party to whom a contract for city improvement had been awarded.

It is insisted, however, that even if the view here indicated be adopted as the law of this case, there can be no recovery, because no breach of the defendants' undertaking is alleged or proved ; and, in support of this claim, the attention of the court is directed to the fact that the recital in the bond makes no reference to any covenant to pay for material, the contention being that the recital contains the full measure of the specific engagement of the sureties which cannot be extended by construction, and the case of the *Nat. Mech. Bkg. Assn.* v. *Conkling* (90 N. Y. 116) is cited to sustain this contention. But this case, I think, hardly comes up to the defendants' present requirements, as a little examination will make plain. Judge EARL, after stating in his opinion that he arrives at his conclusion with some doubt and hesitation, rests it upon the fact that the bond in question, which was conditioned for the faithful performance of the duties of bookkeeper by one of the obligors, simply recited that he had been appointed to the office of bookkeeper and that he had accepted the office and consented to perform the duties thereof, while the alleged breach occurred after he had been promoted to the position of receiving teller, and says that the former position was the one which was brought to the attention of the sureties and the one which they had in mind when they executed the bond. In other words, the undertaking was for the faithful performance of the duties of a specified office and not for those of another and more responsible one, and the case was, therefore, one where general words subsequently used should be controlled and limited by the recital.

In the case under consideration, the recital stated that whereas the above-bounden Whitmore & Sheldon have entered into a contract with the city of Lockport, whereby they have, " *among other things,* covenanted and agreed to grade, curve and pave Niagara street," etc., and then goes on to state in the condition what the other parts of the agreement are. So it can hardly be said that the sureties were informed as to the full measure and extent of their liability by a reference to the recital alone. To ascertain that they were compelled to examine and give effect to the instrument in its

entirety. The case is consequently brought within the principle of that of *The F. N. Bank* v. *Spinney* (120 N. Y. 560).

But it is further urged that, inasmuch as the plaintiff sold his sand to the principal obligors upon a credit of thirty days, the sureties are released from any liability therefor, for the reason that no term of credit was embraced in the contract. It is unquestionably a well-settled rule of law that a surety is entitled to a somewhat rigid construction of his contract. But before this rule is applied his contract is subject to the same construction as any other contract, in order to ascertain and give effect to the intent of the parties, and it is not until this is ascertained that its language is to be regarded as *strictissimi juris*. (*Belloni* v. *Freeborn*, 63 N. Y. 383; *People* v. *Backus*, 117 id. 196.) In attempting to discover the intention of the parties to the bond in suit, the circumstances surrounding its execution may be inquired into. These have already been adverted to, and it is only necessary, by way of recapitulation, to suggest that in the fulfillment of their contract it was necessary that the principal obligors should employ laborers and purchase materials; and the sureties covenanted that the laborers employed and the persons of whom the materials were purchased should be paid — not that they should be paid in any particular manner, or at any specified time, but that payment should be made in the usual and customary way. It does not appear how the laborers were, by their contract of employment, to have been paid, but it is safe to assume that it was at the end of each week, and yet, if they were employed by the day, as they doubtless were, they became entitled to their pay at the close of each day, and deferring payment until the close of each week would, if the defendants' contention is to obtain, be such an extension of credit as would defeat any right of action upon the bond. If, in purchasing the sand in question, the vendees had given and the plaintiff had accepted their note for thirty days, I could see more force to the defendants' argument, for in that case the plaintiff would have accepted a new and independent security, which would indicate that he elected not to rely upon that which was furnished by the bond, but the deferring of payment for a few days seems more in the nature of an indulgence than the extension of a credit, not within the contemplation of the contract. This question does not appear to have been pressed

upon the attention of the trial court, and apparently it furnished no ground for the disposition made of the case at the Circuit, but inasmuch as it is now urged as a reason for sustaining the judgment of dismissal, due consideration has been given to it.

For the reasons stated, we think the learned trial justice erred in withdrawing the case from the jury, in consequence of which a new trial should be granted, with costs to abide the event.

LEWIS, BRADLEY and WARD, JJ., concurred.

Motion for a new trial granted, costs to abide the event.