ADAMS, J.
—In the year of 1894, the plaintiffs, who were co-partners, viere engaged in business at the city of-Buffalo, in this state, as wholesale dealers in coal, and the firm of Harwood & Irish were engaged in selling the same commodity at retail at the village of Skaneateles. In order that the last-mentioned firm might obtain credit of the plaintiffs for such coal as it might purchase of them, the defendant, on the 25th of January, 1894, executed and delivered to the plaintiffs his -certain instrument in writing, of which the following is a copy:
“ Skaneateles, FT. Y., Jan. 25, 1894.
“ For a valuable consideration, I hereby guaranty to C. FT. Shipman & Co., the payment for all bills ior coal shipped to said Harwood & Irish at Skaneateles, FT. Y., by C. FT. Shipman & Co., to the amount of fifteen hundred dollars per month. The understanding between all the parties is that at no time shall there be standing more than three months’ shipment of coal.
“ T. Kelley.
“ Witness: Miles S. Irish.”
Thereafter, and at different times between the date of such . instrument and May 15,1894, the plaintiffs sold coal to the firm *744 of Harwood & Irish, upon credit, and in reliance upon the security furnished by the defendant’s guaranty of payment. Upon the last-mentioned date there appears to have been due the plaintiffs upon account of coal so sold the sum of $970.74, for which sum the firm of Harwood & Irish gave its notes, payable at different dates; and upon the notes thus given payments were made from time to time which were sufficient in amount to reduce the notes to $760.43, and upon the 21st day of September, 1894, a note for this last-mentioned sum was given, which became due on the 8th of November following. This note was accepted by the plaintiffs, and at its maturity a payment was made thereon, which reduced the indebtedness to $500, for which balance two new notes were given by the firm and accepted by the plaintiffs of $250 each, one of which was made payable in twenty days and the other in one month. Upon the 3d of December, 1894, $100 was paid upon the first note, and a new note for $150, payable in 15 days, was given and received, which last-mentioned note was subsequently paid in full. Upon the maturity of the second note of $250, a payment of $50 was made and a new note given and accepted for $200, which matured January 14, 1895, when it was taken up, and another note for the same amount was given and received in the place thereof. This last-mentioned note was made payable to the order of the plaintiffs in one month from the date thereof, with interest, but has never been paid ; and it is to recover the amount due thereon that this action is brought. When this note fell due, the plaintiffs drew upon the makers, Harwood & Irish, for the amount thereof, at three days’ sight, through the Bank of Skaneateles, which draft was accepted, but never paid by the drawees. Upon the trial of the action, the foregoing, together with certain other facts, were stipulated by the parties, the additional facts, so far as they are material to the questions presented, being that the defendant did not consent to, and was not aware of, the giving of the notes and draft above mentioned; that no money consideration was paid for such extension of payment as was accomplished by their execution and delivery; that upon the 11th of March, 1895, the firm of Harwood & Irish became insolvent, and made a general assignment for the benefit of their creditors; and that no request was ever made of the plaintiffs by the defendant to enforce collection of their claim against such firm. It is now insisted, as it was successfully contended at the trial, that these facts constitute a perfect defense to the claim in suit; and the grounds upon which this contention is based are (1) that this guaranty is limited in express terms to $1,500 per month for three months; and (2) that in the giving of the notes and draft above mentioned by Harwood & Irish, without the consent of the defendant, the time of payment of the debt evidenced thereby was so extended and postponed as to release the defendant from any liability under his contract of guaranty.
So far as the first of these two provisions is concerned, there *745 is but little, if any, necessity, in our opinion, for extended discussion. The language of the contract under which the plaintiffs seek to establish the defendant’s liability is neither vague nor ambiguous, for, after expressing his agreement to stand sponsor for the firm in plain and comprehensive terms, an explanatory clause is added, which expressly provides that at no time shall there be standing more than three months’ shipment of coal. How, while the agreed facts do not show precisely upon what terms of payment the coal in question ivas sold to Iiarwood & Irish, they do tend, unmistakably, to prove that each month’s delivery was to be paid at the expiration of the month, and, this being so, it becomes perfectly clear that the “understanding” referred to was that the defendant’s contract of guaranty ivas, by express limitation, not to extend, at any one time, beyond the amount due for three months’ delivery of coal, or $4,500 in the aggregate. Given this construction, we fail to see any force in the defendant’s contention that the contract had been violated, for» the amount claimed in this action is but a fraction of the balance due for coal delivered in the months of April and May, 1894, the total amount of sales for those months falling far short of the maximum sum of the defendant’s liability, viz. $1,500. The trial court apparently ivas not favorably impressed with this branch of the defendant’s contention, for its conclusions of law are all based upon the idea that by accepting the individual obligations of Harwood & Irish the plaintiffs released the defendant from all further liability upon his contract of guaranty, and we therefore turn to that as the crucial question in the case.
In considering this question, it is important to determine, if possible, what term of credit ivas within the contemplation of the defendant when he undertook to become responsible for the coal purchased by Harwood & Irish, and then to what extent, if at all, that term has been extended, without the defendant’s knowledge or consent; and in this connection it may be noted as a somewhat curious fact that in his answer to the - plaintiff’s complaint the defendant undertakes to set forth an exact copy of his agreement, which is there made to read as follows:
“ January 25, 1894.
“ Messrs. O. U. Shipman & Co., Buffalo, M. Y.: This is to certify that I will guaranty the payment of all coal sold to Har-Avood & Irish by you to the amount of fifteen hundred dollars per month, and what notes it may be necessary for them to make for monthly balances.
[Signed] “ T. Kelley.”
This contract, it will be observed, va, ms quite materially from the one AArhich appears in the facts stipulated, in that the defendant, guarantees not only the payment by Harwood & Irish for coal sold to them to the extent of $1,500 per month. *746 but also “ what notes it may be necessary for them to make for monthly balances.” Ilad the defendant elected to stand upon the contract as thus expressed, the case would have been relieved of any embarrassment, as it would then have come directly within the principle laid down by the court of appeals in Railroad Co. v. Burkard, 114 N. Y. 197; 21 N. E. 156. But, inasmuch as the parties thereafter agreed that the contract did not contain the words last quoted, it becomes necessary to dispose of the question from a somewhat different point of view. In our endeavor, therefore, to determine the term of credit which ivas within the contemplation of the parties when the contract was signed, it may be assumed, we think, that the defendant did understand and expect that the plaintiffs were to give some credit to Harwood & Irish, for, had this not been the case, there would have been .no occasion for the guaranty, nor any reason for limiting it to three months’ delivery of coal; but at the same time there is nothing in the language of the contract itself which will warrant the inference that the defendant either assented to or contemplated any extension of credit beyond such as it is the usual custom to grant in transactions of this character. Our inquiry is consequently limited to the single question of whether or not the plaintiffs have consented to any alteration of the original contract; for, if they have, then the defendant is released from his contract of suretyship, even though such alteration may not have operated to his injury, inasmuch as his obligation is strictissimi juris. Page v. Krekey, 137 N. Y. 307; 50 S. R. 650 ; Wilson v. Whitmore, 92 Hun, 466 ; 36 N. Y. Supp. 550. As has already been stated, one of the conceded facts in this case is that at the expiration of the term of credit which was given upon the original purchase the indebtedness of Harwood & Irish was provided for by their notes, which were renewed from time to time as they matured, until the note in suit Avas finally given for the balance Avhich remained unpaid. It is not claimed that these notes, in the absence of an express agreement to that effect, either merged or extinguished the original indebtedness; but it is contended that they did postpone the day of payment, and therefore discharged the surety from any obligation he might be under to pay the debt. In this connection it is proper once more to observe that, if the question under consideration is to be disposed of upon the admissions contained in the pleadings, instead of upon the facts agreed upon, the plaintiffs Avould probably find themseEes concluded by the averment in their complaint that this very note “ Avas given in payment of said balance of $200 for the purchase price of the coal hereinbefore mentioned.” But, inasmuch as the defendant’s counsel apparently lays no stress upon this admission, but rather relies upon the stipulated facts, it may perhaps be regarded as deprived of the force Avhich it would otherAvise possess, and we pass, therefore, to a consideration of the question already adverted to.
*747 The authorities are numerous which hold that the mere acceptance of the promissory note of the principal debtor for a pre-existing debt operates, in the absence of an agreement that such shall not be the effect, as an extension of time, and suspends the right of action upon the debt until the note becomes due. Samuell v. Howarth, 3 Mer. 272; Fellows v. Prentiss, 3 Denio, 512; Myers v. Welles, 5 Hill, 465; Putnam v. Lewis, 8 Johns. 389 ; Bangs v. Mosher, 23 Barb. 478; Dorlon v. Christie, 39 Barb. 610 ; Place v. McIlvain, 38 N. Y. 96 ; Ilappy v. Mosher, 48 N. Y. 313; Hubbard v. Gurney, 64 N. Y. 457-467. And we should hardly regard the question as an open one, were it not for some recent decisions,-which it is insisted are in conflict with those already cited, and which tend to establish a contrary doctrine. Denick v. Hubbard, 27 Hun, 347 ; Graham v. Negus, 55 Hun, 440; 29 S. R. 114; Fuller v. Negus (Sup.), 8 N. Y. Supp. 681. But, after a careful reading of the decisions last cited, it seems to us quite clear that they do not go beyond the extent of holding that a mere naked promise to postpone the payment of a debt, whether the same be in writing or only verbal, does not suspend the right of action upon the original indebtedness, for the reason that there is no new consideration to sustain such a promise. And if we are correct in our assumption that this is the proposition sought to be established, we are not prepared to dispute it, providing, however, that the new promise be of such a character that no one is affected thereby but the original debtor and creditor. Nor should we regard such a proposition as against the weight of authority, for it is undoubtedly true that, if the plaintiffs in this action had simply promised Harwood & Irish that they might have additional time in which to pay the balance due upon their purchase of coal, they would have been at liberty to disregard their promise immediately after making the same, and to bring an action upon the original debt. And if such promise had been made in writing, and put in the form of a non-negotiable promissory note, we fail to see how that would change the relation of the parties, or prevent the plaintiffs, upon tendering the note, from maintaining an action upon the debt. But in this, case it appears that the note was made payable to the order of the plaintiffs, and it was, therefore, negotiable, and the relation of the parties was thereby changed, for the plaintiffs became possessed of a piece of commercial paper, upon which they might have realized money at any time before its maturity, and to that end might have transferred it to a third party, thereby putting it beyond their power to prosecute the debt themselves, and beyonct the power of the defendant to compel its prosecution until the maturity of the note, before which time- it appears that Harwood & Irish had become insolvent, and, consequently, neither the debt nor the note was capable of collection. We conclude, therefore, that the advantages which the plaintiffs obtained by accepting the note of their debtor constituted of themselves *748 sufficient consideration to sustain the extension of time, and operated to suspend their right of action upon their original debt; and such note was consequently a new and valid contract entered into between the creditors and their debtors, which, inasmuch as the defendant did not in any manner assent to its execution, had the effect to release him from any liability as surety to the original contract. Gahn v. Niemcewicz, 11 Wend. 312; Lowman v. Yates, 37 N. Y. 601; Powers v. Silberstein, 108 N. Y. 169 ; 13 St. Rep. 125. Having reached this conclusion, we do not deem it necessary to consider the effect of the draft drawn by the plaintiffs upon their debtors, Harwood & Irish, and therefore we do not pass upon that question, preferring to rest our decision upon the proposition first discussed.
The judgment appealed from should be affirmed, with costs.
HARDIN, P. J-., concurs.