[No. 1345.]

THE PEOPLE FOR USE OF THE COLO. FUEL & IRON CO. v. DODGE ET AL.

PUBLIC WORKS—ACTION ON BOND—MISJOINDER.

Where a contractor to build a state reservoir entered into bond running to the people of the state of Colorado, conditioned to perform his agreement according to its terms, to the satisfaction of certain designated state officers, and to discharge, pay and satisfy all just claims and demands and all expenses incurred in the construction and completion of the reservoir, an action may be maintained on

such bond in the name of the people of the state of Colorado, and directed by the chief executive, and conducted by the attorney general, to enforce the payment of claims for material furnished by private parties to the contractor and used in the construction of the reservoir. And the fact that the suit was brought to enforce the payment of two different claims due to two different parties did not constitute a misjoinder of causes of action.

*Appeal from the District Court of Arapahoe County.*

Mr. B. L. CARR, attorney general, Mr. D. C. BEAMAN and Mr. T. H. HOOD, for appellant.

MESSRS. DOUD & FOWLER and MR. FRANK I. WILLSEA, for appellees.

BISSELL, J., delivered the opinion of the court.

Under an enabling act the designated state officers made a contract in February, 1894, with William E. Dodge to construct a state reservoir near the town of Saguache in Saguache county. The terms and conditions of the contract are immaterial to the present inquiry. After the contract had been executed and to secure its performance the officers under an authority specifically granted by the act, required Dodge to enter into a bond with sureties for the faithful performance of his agreement. This instrument was in the penal sum of $27,850 and contained sundry conditions. Only one of them is before us on the record. This required Dodge to perform his agreement according to its terms to the satisfaction of the designated officers of the state, and "to discharge pay and satisfy all just claims and demands and all expenses incurred in the construction and completion of the reservoir," and likewise to "hold the people harmless from all loss, damage, or expense because of any claim, demand, lien or charge of any character." He was also required thereby "to promptly pay all charges justly made against him in the construction of said reservoir." This bond was signed by Yates and Wiemann as sureties, who are the parties defending this ap-

peal which is prosecuted by the people from an adverse judgment entered on demurrer. After its original execution, the contract was varied by an addendum, but this in no wise affects the liability of the sureties nor does it bear on the legal questions presented by the demurrer. Dodge commenced his work and built the reservoir, but failed to pay some of the material men to whom he became liable for part of what went into the structure. The amount involved was very small, being only the claim of the Colorado Fuel & Iron Co., which at the date of the suit amounted to $828.86, and the claim of the Hendrie & Bolthoff Manufacturing Company, amounting to $272.53. Whether these were all the unsettled claims of material men we are not advised, but they are the only ones set up in the complaint. The two claims stand on the same basis with an immaterial exception that the Hendrie & Bolthoff Company brought suit against Dodge personally and got judgment against him. Afterwards the chief executive of the state directed its principal law officer, the attorney general, to bring suit on the bond to compel the payment of these claims. In obedience to these instructions the attorney general in the name of the people, who are the obligees named in the bond, brought this action against Dodge and his sureties to enforce payment. It naturally transpires that other counsel representing the private claimants are associated with the attorney general, but we regard this of slight moment, because it is in reality a suit brought by the obligees of the bond against the sureties through the direction of the executive who has control of such litigation.

These are the only facts requisite to an understanding of the case, and on which the court below adjudged the complaint insufficient. We may state generally that this pleading contained enough to state a cause of action, providing the suit could be maintained by the people on the bond, and if the facts warranted judgment against the sureties who guaranteed Dodge's performance. The general outline of the defense is embraced within the claim that this can under no

circumstances be brought within the rule that where B prom-
ises A to pay A's debt to C, C may maintain a suit for the
breach of the contract and recover on the promise. This
has been the general tenor of the discussion on both sides,
the appellees insisting that they are not within the rule, and
the plaintiff contending with equal vigor that in cases of this
description, the doctrine which has been so often applied to
support the liability of the promisor permits the maintenance
of the action. Supporting their position the appellees very
strenuously insist that since the bond ran to the people of
the state, and the obligation if any was the obligation of the
sovereignty, it is not within the rule because the obligation
is unenforceable in any form and no remedy is provided pri-
vate suitors by which if they have a claim against a sover-
eignty, they may enforce it. We are quite well aware that
the authorities are conflicting on this proposition, but the
better reasoning and the more satisfactory statement of the
proposition is found in the cases which permit such a liability
to be enforced. Many actions of a similar description have
been brought in other states, and the courts have been able
to assign very persuasive reasons to support their judgment.
We quite agree with the opinion in the *Coster* case from
New York, wherein the nature of the obligation of the state
to its citizens on contracts of this description is fully analyzed,
and wherein in his very clear and exhaustive fashion, Judge
Folger states the situation of the state with reference to
the citizens, to whom it may become obligated by contract.
He insists that the state is under obligation, and that the
obligation is of a legal character; that it is entirely analogous
to one assumed by a private individual, and observes that the
only distinction between cases where the state is the prom-
isee, and where the promise runs to an individual, is that as
against the state, no court is open to the plaintiff in which
to bring his suit, and no remedy has been provided by which
he may assert his cause of action, but he observes that for
the purposes of the application of the doctrine, the obligation
on the part of the state is as broad and as full and complete

as though it was that of a private person, and that it is a *non sequitur* for the defendant to insist that an absence of a forum and the want of a remedy prevents the enforcement of the promise.   We agree with him that there is neither equity nor justice in the contention, and where, as in this case the defendants have entered into a contract with the people of the state to do and perform certain things, and the beneficiaries for whose benefit the promise is made though then undisclosed, and though they may be entirely without remedy when they spring into existence which they can enforce as to the promisee, there is on the part of the state a legal obligation which it may or may not admit.   The same doctrine has been applied to contracts with municipalities and counties which are a part of the governmental organization.   In these latter cases where the buildings have been constructed and the material men are doubtless without the right to file a lien against them, yet, if a bond has been given to secure the due performance of the work and the payment of the price of the labor or materials, the parties who labor, or the parties who furnish the material, may under proper circumstances bring suit and enforce the security which the sovereignty has compelled the contractor to execute to protect the citizens.   The doctrine is a just one, it commends itself to our notions of natural equity, and we have no inclination whatever to follow the technical distinctions of other courts by which they have permitted these contracting parties to escape the obligation which they voluntarily assumed.   *City of St. Louis v. Von Phul*, 133 Mo. 561; *Knapp v. Swaney*, 56 Mich. 345; *Little v. Banks*, 85 N. Y. 258; *Semple & Son v. Hale et al.*, 34 Neb. 220; *Lyman v. The City of Lincoln et al.*, 38 Neb. 794; *State v. Livingston*, 64 Ia. 560; *Jordan v. Kavanaugh*, 63 Ia. 152; *Wells v. Kavanagh*, 70 Ia. 519; *Ross v. Crane*, 74 Ia. 375; *Williams v. Markland et al.*, 15 Ind. App. 669; *Wilson v. Whitmore*, 92 Hun, 466; *Coster v. The Mayor*, 43 N. Y. 399.

The foregoing decisions all proceed on this general line, they support the doctrine by cogent reasons, the cases are

exactly parallel, we believe that they announce what the law ought to be, as well as what it is, and without hesitancy we adopt their conclusions.

But back of all this there is in the present case another reason by which this action can be supported, and which possibly, takes the case entirely out of the range of the controverting decisions. This is not an action brought by the Colorado Fuel & Iron Company and Hendrie & Bolthoff, as the real parties in interest to enforce the liability of the sureties, but it is a suit brought by the people of the state, to whom the bond runs under the direction of its chief executive on whom the duty is laid, and by the chief law officer of the state, who is the legal representative of the executive and of the people, to enforce a bond given to them which by the terms of the statute they had a right to take, and the breach is sufficiently alleged. It matters not that the benefits of the suit are to go to third persons because the collection is made by the people who have a right to enforce the bond, and it is not for the defendants to say that when the state recovers according to the terms of the contract, they will devote the proceeds to the payment of the debts which the claimants themselves could not enforce against the obligors. As we have already suggested, we do not assent to the latter principle at all, but even if we did as the matter stands, and as the suit is brought, the sureties may not defend on the ground that the money when recovered will be paid by the state to the debtors whom the principal contractor owes. The sureties undertook that the contractor should pay all claims and charges and all expenses and every charge justly incurred in the construction, and when the contractor failed to pay these debts, it was not only the right of the state to enforce that security and compel a payment, but it was a duty which the executive officers owed to the other citizens, and they are discharging their public duty when they compel the contractor and his sureties to perform their contract. When parties become sureties for a person who undertakes to construct a public improvement, they must expect in case he fails to dis-

charge the obligations of his contract that they will be compelled to respond. Such a result is a righteous one and saves the claimants the trouble of going to the legislature and seeking relief which is usually granted by the lawmaking power when they discover that their citizens have been wronged through the fault and neglect of the state officers and that they are otherwise without remedy. When this is done, it imposes additional burdens on other citizens who ought not to be called on to bear these expenses. The legislature acted wisely when they provided that the officials authorized to make the contract should take a bond from the contractor to secure the faithful performance of his agreement, and they were wise when they inserted a provision which compelled him to discharge all demands of laborers and material men. It was simply the proper performance of a public duty for the protection of the citizens.

It is insisted that there is a misjoinder of causes of action in the complaint, and for this reason the demurrer should have been sustained. We do not understand that this question is properly presented. As we look at it, there are not two causes of action at all, but it is an action on the bond for the non-payment of claims against which that agreement provided. There are simply two items, one or both of which would be a breach of the bond, and on the recovery of the penalty there could be but one satisfaction and this of the claims which might be proven.

For these reasons we are of the opinion that the complaint stated a cause of action, and the proof being otherwise sufficient, the plaintiffs may recover.

The court erred in sustaining the demurrer, and the judgment will be reversed, and the case sent back for trial in conformity with this opinion on the issues which may be made.

*Reversed.*