THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CLINTON T. BACKUS et al., Appellants.

The contracts of sureties are to be construed like other contracts so as to give effect to the intention of the parties. In ascertaining that intention the language used in the contract is to be read in the light of the surrounding circumstances, and when so ascertained the responsibility of the sureties is not to be extended or enlarged by implication or construction and is *strictissimi juris.*

Defendants were guarantors upon a bond or contract given in June, 1880, by the F. N. Bank of Auburn, a depository of the state funds received by the agent and warden of the Auburn state prison. The bond recited that "certain moneys of the state of New York have been and are proposed to be deposited," and in consideration of such deposits the bank agreed to pay the same to the state treasurer on demand, and the guaranty was of the "full and punctual performance of the condition of the agreement on the part of said bank." By the statutes in force at the time of the execution of the contract and guaranty said agent and warden was required to deposit all the moneys received by him in said bank. At that time the contract system of labor was in force, but after the passage of the act of 1884 (Chap. 21, Laws of 1884), prohibiting that system, the prisoners were employed in manufacturing on state account. This change greatly increased the amount of deposits. In an action upon the guaranty, *held,* that defendants were not released from liability by the change; that the liability was not limited to such moneys as the agent had theretofore deposited, but covered all moneys which he, under the direction of the state comptroller, might deposit.

The charter of said bank, after the execution of the bond and guaranty, but before the making of the deposits in question, expired. Its existence, however, was extended under and in pursuance of the act of congress of 1882 (22 U. S. Stat. at Large, 162), authorizing national banks to extend their corporate existence, which declares that in case of such extension the bank "shall continue to be in all respects the identical association it was before the extension." *Held,* that defendants were not discharged from liability by the extension.

*Thompson* v. *Young* (2 Ohio, 334); *Union Bank* v. *Ridgely* (1 Harris & Gill, 324); *Bank of Washington* v. *Barrington* (2 Pa. 27); *Brown* v. *Lattimore* (17 Cal. 93), so far as they uphold the contrary doctrine, disapproved.

(Argued October 15, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order

made February 5, 1889, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought by the People against the defendants as guarantors upon the following bond or contract of the National Bank of Auburn, to wit:

"Whereas certain moneys of the state of New York have been and are proposed to be deposited in the First National Bank of Auburn, under the direction of the comptroller of the state, by the agent and warden of Auburn prison, to the credit of the treasury of the state for safe keeping and for interest.

"Now, therefore, the said First National Bank of Auburn, in consideration of such deposits, and for value received, does hereby agree to pay on demand to the order of the state treasurer or other officer of the state having lawful authority to demand the same, such deposits and any and all parts thereof, together with interest on daily balance, at the rate of three per cent.

"Witness the seal of said bank and the signature of its president and cashier, this 14th day of June, 1880."

The guaranty was as follows:

"In consideration of the making the deposits by the People of the state of New York in the First National Bank of Auburn, in the agreement mentioned, and for value received, we, the undersigned, Clinton T. Backus, Manson F. Backus, James Kerr and William E. Hughitt, do hereby jointly and severally guarantee the full and punctual performance of the condition of said agreement on the part of said bank, and that all such deposits and interest shall be fully paid on legal demand. The said guarantors may serve upon the comptroller a written notice, terminating or limiting their liability under this guaranty, after a date to be specified in said notice, which shall not be less than ten days after the service of said notice."

The agent and warden was by law the official manager of the state prison at Auburn, and was requested to deposit all moneys received by him each week to the credit of the treasurer of the state in a bank located at Auburn, and send

to the comptroller weekly a statement showing the amount so received, and from whom or where received and deposited, and the days on which such deposits were made, such statement to be certified by the proper officer of the bank receiving such deposits. The agent and warden was required to verify by his affidavit that the sum so deposited was all the money received by him from whatever source of prison income during the week and up to the time of the deposit, and all moneys so deposited by him were subject to the quarterly drafts of the treasurer of the state. The law required that any bank in which deposits should be made should, before receiving any such deposit, file a bond with the comptroller of the State, subject to his approval, for such sum as he should deem necessary. (§ 50, chap. 460, Laws of 1847, as amended by chap. 58, Laws of 1854, and chap. 599, Laws of 1860.) By section 6 of chapter 177 of the Laws of 1877, it was provided that "the system of labor in the state prisons shall be by contract or by the state, or partly by one system and partly by the other, as shall in the discretion of the superintendent be deemed best." From the time of the execution of the bond until December, 1884, the business of the Auburn state prison was carried on under what was known as the contract system. By chapter 21 of the Laws of that year, the renewal of the then existing contracts, or the making of new contracts for convict labor, was prohibited, and after that the prisoners were employed in manufacturing on state account. The bank was incorporated under the national bank act of 1863, on the thirty-first day of December of that year, and by its articles of association it was provided that it should continue until the 25th day of February, 1883, unless sooner dissolved by the act of a majority of the stockholders thereof. By the act of congress, passed July 12, 1882 (U. S. Statutes at Large, vol. 22, p. 162), national banks were authorized to extend their corporate existence; and in January, 1883, such proceedings were taken under that act as to extend the charter of the bank and its corporate existence until the 24th day of February, 1903. By section 4 of that act it is provided that "any

association so extending the period of its existence shall continue to enjoy all the rights and privileges and immunities granted, and shall continue to be subject to all the duties, liabilities and restrictions imposed by the Revised Statutes of the United States, and other acts having reference to national banking associations, and it shall continue to be, in all respects, the identical association it was before the extension of its period of existence."

After the giving of the bond by the bank and the guaranty by the defendants the agent and warden of the prison made deposits in the bank, from time to time, down to February, 1888, on which day there was upwards of $65,000 on deposit in the bank, which it refused and neglected to pay upon the draft of the state treasurer, it having become insolvent, and this action was brought against the defendants, as sureties, to recover the amount remaining on deposit.

*William F. Cogswell* for appellant. All contracts of guaranty are to be strictly construed in favor of the surety. (*Hamilton* v. *Van Rensselaer*, 43 N. Y. 245 ; *E. Nat. Bk.* v. *Kaufman*, 93 id. 273 ; *Wright* v. *Russell*, 2 Black. 934 ; *McClusky* v. *Cromwell*, 11 N. Y. 593–598 ; *N. M. B. Assn.* v. *Conkling*, 90 id. 116 ; *L. Assn. Co.* v. *Bold*, 6 Ad. & El. [N. S.] 514.) The moneys received by the state from the sale of its merchandise were not within the terms of the defendant's agreement. (Laws of 1860, chap. 399, § 8 ; *Bd. of Education* v. *Fonda*, 77 N. Y. 350.) The guaranty did not extend beyond the life of the bank. (*Thompson* v. *Young*, 2 Ohio, 334 ; *Union Bk.* v. *Ridgley*, 1 H. & G. 324 ; *Bank of Washington* v. *Barrington*, 2 P. & W. 27 ; *Brown* v. *Lattimore*, 17 Cal. 93 ; *G. Bk.* v. *Kingman*, 16 Gray, 473.)

*Charles F. Tabor*, attorney-general, for respondent. As to the law concerning the financial affairs of the state prison at Auburn, and the system of labor therein at the time of making the contract herein and down to the commencement of the action, see 3 Revised Statutes (7th ed.), 2594, 2597, 2598, sections 29, 40, 42, 43, 47 ; Laws of 1860, chapter 399, sec-

tion 50. As to the sources of prison income, and the manner
in which the labor of convicts was authorized by law, see
Revised Statutes, 2598, 2610, 2617, sections 48, 77, 103;
Laws of 1860, 2633; Laws of 1866, chapter 458; Laws of
1877, chapter 177, section 6. The defendants were sureties
or guarantors in the same capacity as the sureties of public
officers, and the same rule of law applicable to such cases
should apply as against defendants. (*Rowland* v. *Mayor, etc.*,
83 N. Y. 376; *People* v. *Pennock*, 60 id. 421, 426.) The bond
executed by defendants was a security required by law, and
the state was authorized to impose any additional burdens.
(*People* v. *Vilas*, 36 N. Y. 459; *Suprs. of Monroe* v. *Clark*,
92 id. 391, 395; *Board of Education* v. *Quick*, 99 id. 138;
*Metcalf* v. *Broome*, 6 East, 509; *Bk. of Wilmington* v. *Woll-
son*, 3 Har. 90, 95, 96; *E. R. R. Co.* v. *Loring*, 138 Mass. 381;
*Mayor* v. *Kelly*, 98 N. Y. 467; *People* v. *Lee*, 104 id. 449,
450; *W. Ins. Co.* v. *Clinton*, 66 id. 326; *Russell* v. *Freer*,
56 id. 67; *Casoni* v. *Jerome*, 58 id. 315, 321; *McWilliams* v.
*Mason*, 31 id. 294.) Defendants were directors and officers
of the bank, and, as such, they assumed a duty to the cred-
itors of the bank to inform themselves of what would appear
by an inspection of the books of the institution of which they
were managers. (*Gillet* v. *Phillips*, 13 N. Y. 117; *Lefevre* v.
*Lefevre*, 30 id. 27; *Hurd* v. *Kelly*, 78 id. 597.) Defendants
are estopped from questioning the power of the bank to make
the agreement, or the right of the comptroller to exact a bond.
(*Remsen* v. *Graves*, 41 N. Y. 471; *U. G. Co.* v. *R. M. N. B.
Co.*, 96 U. S. 640; *Auburn Bk.* v. *Brinkerhoff*, 44 Hun, 142,
146; *Nat. Bk.* v. *Matthews*, 98 U. S. 621; *Nat. Bk.* v. *Whit-
ney*, 103 id. 99; *Griffith* v. *Hardenberg*, 41 N. Y. 464, 469;
*Burrill* v. *Acker*, 23 Wend. 606; *Decker* v. *Judson*, 16 N. Y.
439; *Chamberlain* v. *Beller*, 18 id. 115; *Gerould* v. *Wilson*,
81 id. 573.) As to the system of labor in the prisons subse-
quent to 1884, see Laws of 1884, chapter 21; Laws of 1886,
chapter 432; *City Bank* v. *Phelps* (86 N. Y. 484). The
claim that the charter of the bank expired in 1883 is unavail-
able to the defendant. (U. S. St. 1882, p. 162, § 4; *Exeter*

*Bk.* v. *Rogers,* 7 N. H. 21; *C. Nat. Bk.* v. *Phelps,* 16 Hun, 158, 160; 97 N. Y. 44; 86 id. 484; *Anderson* v. *Longden,* 1 Wheat. 85; *Soule* v. *U. S.,* 100 U. S. 8; *Hughes* v. *Smith,* 5 Johns. Rep. 167, 172; *F. S. M. E. Ch.* v. *Brownell,* 5 Hun, 464.) The sureties are liable notwithstanding a change in the contract of the principal. (*White's Bk.* v. *Myles,* 73 N. Y. 339; *Belloni* v. *Freeman,* 63 id. 387; *E. Nat. Bk.* v. *Kauf mann,* 93 id. 281; *Gates* v. *McKee,* 13 id. 232; *Mason* v *Pritchard,* 12 East, 227; *Laurence* v. *McCalmont,* 2 How [U. S.] 450; *F. Nat. Bk.* v. *Spinney,* 47 Hun, 293; *Sickels* v *Marsh,* 44 How. 92; *Rindge* v. *Judson,* 24 N. Y. 66; *R. Co.* v. *Goodwin,* 3 H. & Gor. 320; *Strawbridge* v. *B. & O. R. R. Co.,* 14 Md. 360; *Pelton* v. *Prescott,* 13 Iowa, 567; *Gardner* v. *Harbeck,* 21 Ill. 129; *U. S.* v. *Woodman,* 1 Utah, 265; *M. S. Bk.* v. *Peck,* 28 Vt. 208; *M. C. & B. Co.* v. *Van Vorst,* 21 N. J. L. 100.)

EARL, J. No citation of authorities is needed to show that the contracts of sureties are to be construed like other contracts so as to give effect to the intention of the parties. In ascertaining that intention we are to read the language used by the parties in the light of the circumstances surrounding the execution of the instrument, and when we have thus ascertained their meaning we are to give it effect. But when the meaning of the language used has been thus ascertained, the responsibility of the surety is not to be extended or enlarged by implication or construction, and is *strictissimi juris.*

After the contract system in the state prisons was abolished, and manufacturing therein could be done only on state account, the amount of money deposited in this bank by the agent and warden largely increased, and it is now claimed on behalf of the defendants that their responsibility as sureties was largely extended beyond what was contemplated at the time of the execution of their guaranty, and that they are, therefore, discharged.

By the statutes in force at the time of the execution of the

bond and guaranty, the agent and warden of the prison was required to deposit all the moneys received by him from any source in the bank. It is not reasonable to suppose that the sureties, when they signed their guaranty, had in mind the particular source from which the agent and warden received the money. They must have known that they became responsible for all the moneys, from whatever source, coming into his hands to be deposited. It cannot be supposed that they had in mind that the system of labor then in force at the prison would remain unchanged for an indefinite time, or that they cared anything about it. Much stress is laid upon the words in the bond, " certain moneys," which had been and were proposed to be deposited. We think those words have reference to the moneys to be deposited by the agent and warden of the prison, as distinguished from other moneys of the state. They were intended to point out the source from which the moneys of the state to be deposited should come ; and the words " such deposits," used later in the bond, have reference to the deposits to be made by the agent and warden of the prison. So, the bond, in the most general terms, covers and applies to all the money to be deposited in the bank, under the direction of the comptroller of the state, by the agent and warden of the prison. The words " certain moneys " and " such deposits " do not indicate that the parties then had in mind the source from which the agent and warden should receive his money or the particular moneys which he had theretofore deposited. But they manifestly have reference to all the moneys which, under the direction of the comptroller, he might deposit in the bank. The bank desired to get all the deposits it could, and the defendants, who were directors and officers of the bank, desired to secure all the deposits. It cannot be supposed that they contemplated, at the time they signed their guaranty, that their liability was to be limited or restricted to the amounts which had been previously deposited, or that those amounts had any influence whatever upon their action. They must, therefore, be held to the plain language of their guaranty, and, in holding that, it covers moneys deposited subsequently to 1884,

we do not extend their responsibility by implication or construction, but simply hold them to the responsibility plainly expressed in the language of the bond and the guaranty.

It is still further claimed, on the part of the defendants, that they are discharged from any liability on their guaranty on account of the extension of the existence of the corporation in 1883, before any default on the part of the bank. And for this contention the learned counsel for the defendants cites: *Thompson* v. *Young* (2 Ohio, 334); *Union Bank* v. *Ridgely* (1 H. & G. 324); *Bank of Washington* v. *Barrington* (2 Pa. 27); *Brown* v. *Lattimore* (17 Cal. 93). None of those cases are precisely like this in their circumstances, but, so far as they uphold the contention of the defendants, we are quite unwilling to follow them. The contrary doctrine was held in *Exeter Bank* v. *Rogers* (7 N. H. 21); and we think our decision in *National Bank of Poughkeepsie* v. *Phelps* (97 N. Y. 44), is ample authority for the maintenance of this recovery, notwithstanding the extension of the corporate existence of the bank. In the latter case, under the provisions of the national banking act, and of chapter 97 of the Laws of 1865, the state bank was transformed into a national bank, and it was held to be but a continuance of the same body under a changed jurisdiction; that between it and those who had contracted with it, it retained its identity and might, as a national bank, enforce contracts made with it as a state bank; that where a state bank, at the time of its change to a national bank, held a continuing guaranty of loans made by it upon the strength of which it had made loans, and after the change had made further advances, an action was maintainable by the national bank upon the guaranty, and that the guarantor was liable for the loans made, both before and after the change. Here a new corporation was not formed; but there was a mere prolongation of the existence of the same corporation whose corporate identity was not changed or lost. The bank which defaulted was the same bank for which the defendants became bound. There were not two banks in succession, but all the time one bank. Its charter was

amended so as to extend its existence; and in the original national banking act (§ 67), it was provided that congress could, at any time, "amend, alter or repeal this act." It would certainly be a very inconvenient rule to hold that all the contracts of sureties to the bank, and of sureties by the bank to other persons, should be destroyed by every material change or alteration in its charter. The contract was entered into by the sureties with knowledge of this law, and it became a part of their contract as if they had stipulated that the changes or alterations might be made. The act of 1882 was a mere amendment or alteration of the previous banking act.

We do not deem it important to consider the effect that should be given to the fact that these various defendants, as officers of the bank, procured the extension of its existence, of which they now seek to take advantage.

For the reasons we have already given, and those so well expressed in the opinion of the learned referee before whom the case was tried, we think the judgment should be affirmed, wiih costs.

All concur.

Judgment affirmed.