CLINTON W. RICHARDSON, Respondent, *v*. COUNTY OF STEUBEN, Appellant.

**Guaranty and suretyship — equity — liability of surety for partnership after change in copartnership and management — when guaranty of private bank conducted by a partnership continues in existence as guaranty of the bank although there was a subsequent change in membership of the firm.**

1. The rule that the liability of a surety is to be strictly construed does not mean that in interpreting the undertaking of a surety we are to be governed by different fundamental rules than those which are applicable to the construction of another contract. And least of all does it permit the court to cast aside the fundamental principle applicable to all contracts that in their interpretation it is to seek for the true intent of the parties who executed them in the light of surrounding circumstances.

2. This action was brought to recover moneys claimed to have been paid by plaintiff to defendant under a mistake of fact. The moneys were so paid by plaintiff on account of his alleged liability as surety for the repayment by the George W. Hallock Bank of Bath of moneys deposited therein by the county treasurer of the defendant. The theory upon which plaintiff has been allowed to recover is that the bank in behalf of which he executed the undertaking was owned by a copartnership and that between the execution of his undertaking and the deposit of the county moneys, for which he has been compelled to respond on default of the bank, changes had taken place in the composition of the copartnership which had the effect of releasing him and that his payment was made without knowledge of these changes. *Held*, that it was the intent of plaintiff, as measured by his written engagement in the light of surrounding circumstances, to guarantee that the banking institution which received the county deposits would repay them and that he never intended to limit his engagement to the one that so long as the then partners continued to be copartners and owners of the bank they would fulfill their obligations. The evidence justifies the conclusion that there was an intent to guarantee the actions of the *bank* rather than of the copartnership. Hence, the liability was continuing and is not to be measured or limited by the rules which control an ordinary guaranty of a copartnership. (*Barclay* v. *Lucas*, K. B. 1786, 1 Term Rep. 292; *Metcalf* v. *Bruin*, 12 East, 400, followed; *Burch* v. *De Rivera*, 53 Hun, 367, distinguished.)

*Richardson* v. *County of Steuben*, 174 App. Div. 491, reversed.

(Argued January 27, 1919; decided March 4, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 23, 1916, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Fred A. Robbins* and *James Flaherty* for appellant. The undertaking constituted a continuing guaranty and covered all deposits made by the treasurer in the George W. Hallock Bank. (*Bank* v. *Phelps,* 97 N. Y. 44; *People* v. *Backus,* 117 N. Y. 196; *McElwain Co.* v. *Primavera,* 180 App. Div. 288; *Palmer* v. *Baggs,* 56 N. Y. 523; *Beakes* v. *Da Cuncha,* 126 N. Y. 293; *Barclay* v. *Lucas,* 1 T. R. 292; *Metcalf* v. *Bruin,* 12 East, 400; *Gargan* v. *School District,* 4 Colo. 53; Pingrey on Guaranty & Suretyship [ed. 1912], 99; *Meyers* v. *Edge,* 7 T. R. 254; *Strange* v. *Lee,* 3 East, 484.)

*Monroe Wheeler* for respondent. Respondent was not liable to appellant on said undertaking for the balance due appellant from William N. Hallock and Louise N. Hallock at the time of their adjudication in bankruptcy. (*Bennett* v. *Draper,* 139 N. Y. 266; *Burch* v. *De Rivera,* 53 Hun, 367; *Strange* v. *Lee,* 3 East, 484; *Dry* v. *Davy,* 10 Adolph. & Ellis, 30; *Blackhouse* v. *Hall,* 118 Eng. C. L. 505; *Pemberton* v. *Oakes,* 4 Russell, 154; *Simmons* v. *Cooke,* 8 Moore, 588; *Standard Oil Co.* v. *Arnestad,* 34 L. R. A. 861; *Weston* v. *Barton,* 4 Taunt. 673; *Lyon* v. *Plum,* 14 L. R. A., N. S., 1231; *Matter of Hallock,* 226 Fed. Rep. 821; Burdick on Partnership, 341.) The rule is well settled that a guarantor is bound only by the strict letter or precise terms of his contract, and that the claim against him is *strictissimi juris.* (*Creamer* v. *Mitchell,* 162 N. Y. 486; *McShane Co.* v. *Padin,* 142 N. Y. 207; *Guardian Trust Co.* v. *Peabody,* 12 App. Div. 648; 195 N. Y. 544.)

1919.]                    Opinion, per HISCOCK, Ch. J.                    [226 N. Y.]

HISCOCK, Ch. J.   This action was brought to recover moneys claimed to have been paid by plaintiff to defendant under a mistake of fact.   The moneys were so paid by plaintiff on account of his alleged liability as surety for the repayment by the George W. Hallock Bank of Bath of moneys deposited therein by the county treasurer of the defendant.   The theory upon which he has been allowed to recover is that the bank in behalf of which he executed the undertaking was owned by a copartnership and that between the execution of his undertaking and the deposit of the county moneys for which he has been compelled to respond on default of the bank, changes had taken place in the composition of the copartnership which had the effect of releasing him and that his payment was made without knowledge of these changes.

Amongst the facts which were found were these uncontroverted ones:

On January 24th, 1910, when plaintiff executed as surety the undertaking in question, there had existed in the village of Bath for over sixty years a bank known as and conducting business under the name of "The George W. Hallock Bank."   On the death of the founder of the institution several years before the undertaking was executed his widow and son as copartners continued to conduct the bank at the same place, under the same name, and without any changes either external or internal in its methods of doing business.   On the death of the son shortly before the bond was executed a new copartnership was formed consisting of the widow and a grandson who likewise at the same place and under the same name, without changes external or internal, continued the operations of the bank, and it was this copartnership which was in existence at the time the bond was given.   Thereafter and prior to May 31st, 1912, other changes were made in the personnel of the copartnership which, however, always continued to conduct the bank at the same place and under its original

name without indication of any change in ownership or management.

When one Masterman was elected county treasurer of the defendant in 1910, by written instruments duly filed in the office of the clerk of the defendant and of the state treasurer he designated " the then George W. Hallock Bank of Bath, N. Y." as a depository for the moneys to be received by him as county treasurer, and in accordance with law there was executed by said bank as principal with plaintiff as one of the sureties, conditioned for the repayment of moneys deposited with it the undertaking which has given rise to this controversy and which it seems essential to quote in full. It reads as follows:

" *Know All Men By These Presents:* That, whereas William G. Masterman, of the City of Hornell, of the County of Steuben and State of New York, now the Treasurer of the County of Steuben aforesaid, as such County Treasurer, has heretofore designated the George W. Hallock Bank of Bath, New York as a depository for moneys received by him, as such County Treasurer, and is about to deposit in such bank a sum or sums of moneys not exceeding the sum of Ten Thousand Dollars, which said sum is hereby specified as the amount said Treasurer shall be authorized to have on deposit with said bank at any one time;

" *Now, Therefore,* We, the undersigned, the said George W. Hallock Bank, of Bath, New York, Principal, and George W. Peck and Clinton W. Richardson, Sureties, do hereby, pursuant to Section 145 of the County Law, jointly and severally undertake that the said George W. Hallock Bank of Bath, New York, shall faithfully keep and pay over on the order or warrant of the said Treasurer, or any other lawful authority, such deposits and the agreed interest thereon; and also any deposit that shall be made by said Treasurer, in said bank for the payment of bonds or coupons that shall by their

terms be made payable at a bank or banks, and we do hereby further jointly and severally undertake to protect and save harmless the County of Steuben from any and all loss, because of the deposits and payments aforesaid, or any of them.

" Witness our hands and seals the 24 day of Jan. in the year of our Lord one thousand nine hundred and ten (1910).

" GEORGE W. HALLOCK BANK,
" by W. N. HALLOCK, *Cashier*   [L. S.]
" GEO. W. PECK                   [L. S.]
" CLINTON W. RICHARDSON,         [L. S.] "

Then follow in proper form acknowledgments and approval of the bond.

Deposits were thereupon made by the county treasurer in said bank, but when it suspended payment in 1912 having on hand several thousand dollars of county deposits, there had been withdrawn from it all of the deposits made during the continuance of the copartnership owning and conducting the bank at the time when the undertaking was executed. Nevertheless when notice was served upon the plaintiff in behalf of the county, calling upon him under his bond to pay one-half of the county deposits remaining with the bank when it suspended payment, he complied with the demand and paid the sum of over $3,000 which thus far in this action he has been allowed to recover on the ground, as stated, that it was paid under a mistake of fact.

In addition to the facts which have been summarized and some others which perhaps amplify them without changing their effect it has in substance been found that at the time when the above-mentioned notice was served upon plaintiff and at the time when he paid thereunder and in accordance therewith, he did not know that the moneys deposited in the bank while the organization of

2

the copartnership continued as it was at the time the bond was executed had been drawn out and fully paid, but supposed and believed that the sum which he was paying was one-half of the moneys which were deposited in said bank during the continuance of the copartnership existing at the time when he gave his bond, and that he had no knowledge that there had been any change in the personnel of the copartnership owning and conducting said bank; that his payment was made and received " by the mutual mistake of said county (the defendant), its said treasurer and of this plaintiff that this plaintiff was liable to the county for said payment and that the said sum of $3,041 was one-half of the balance due from the George W. Hallock Bank as composed and operated and conducted " by the persons who constituted the copartnership at the time the bond was made; that " payment was made under the mutual supposition of both of them (plaintiff and the county treasurer) that nothing had occurred since its making and delivery to release plaintiff from his liability for the deposits owing at the time of the dissolution;" that " this plaintiff was not in any respect liable for the payment over (of the sum paid by him) by said bank to the said treasurer of the county of Steuben or to the county of Steuben."

Then lastly there is a finding upon which appellant greatly relies as throwing a most potential light upon the interpretation to be given to the bond. This finding is " That neither plaintiff nor Masterman (the county treasurer) at the time said bank was designated * * * and said bond given, or at any other time, until after the 31st day of May, 1912 (when it failed), knew whether said bank was an incorporated bank, a private bank or an individual bank and neither of them knew or had any information as to what persons owned or were interested in said bank and neither of them made any inquiry on that subject. That the copartnership agreement between Mary H. Hallock and William N. Hallock

in April, 1908, was kept in said bank and that neither the plaintiff nor the said Masterman, nor any person connected with said bank knew of the existence of or terms of the same."

The fundamental proposition upon which must rest plaintiff's right to recover is the one that his suretyship merely covered the copartnership owning the George W. Hallock Bank as it existed at the time when the bond was given and that his liability cannot be extended to cover a copartnership of which the personnel had been changed. If he is wrong in this proposition and his undertaking is to be construed as insuring the responsibility of the George W. Hallock Bank as a continuing institution, irrespective of change in the owning copartnership, he is not entitled to recover. If in the decision of this question we were confined to a consideration of the naked written words of the undertaking, we should find it a close one. However, we are not thus confined but have very illuminating circumstances casting their light upon the intent of the parties and the interpretation of their contract.

The rule that the liability of a surety is to be strictly construed is so often reiterated with a very general sense of its true meaning that we perhaps may profitably recall just what its application is to such a case as this. It does not mean that in interpreting the undertaking of a surety we are to be governed by different fundamental rules than those which are applicable to the construction of another contract. And least of all does it permit us to cast aside the principle applicable to all contracts that in their interpretation we are to seek for the true intent of the parties who executed them. After that intent has been discovered and the meaning of the contract determined, it is of course true that the liability of a surety is to be strictly and rigidly limited by the scope and meaning of the instrument which he has executed. (*People v. Backus*, 117 N. Y. 196; *Bennett*

v. *Draper*, 139 N. Y. 266.)    In ascertaining that intention and construing the language which has been used in a contract of suretyship, as well as in another contract, that language is to be read in the light of the surrounding circumstances.    (*People* v. *Backus, supra.*)

In this case the significant circumstances to which we may look are the ones that there had existed in this rather small community for over half a century a bank which by its name and form of management had assumed all of the appearances and attributes of an ordinary banking corporation and unchanging institution; that when plaintiff was about to execute an undertaking that this institution for the brief term of a county treasurer would continue to do as it seems to have done for over half a century — pay its deposits on demand — he neither knew nor inquired what its internal constitution and ownership were. Apparently his mind visualized the fact that it had been a permanent institution receiving and paying back deposits during all of this long time and he was not interested in the question whether it was a corporation, an individual bank or a private bank, for interest would have begotten inquiry and of inquiry there was none. There stood before him an organization of some kind taking the external form of a bank which for this long time had met its obligations and he would guarantee that it would continue to do so for a few years without even inquiring what the form of the organization behind it was.    There was entirely absent any circumstance or suggestion of suretyship for a copartnership and to be limited by its unchanged membership.

When in the light of these circumstances — of this indifference to the form of organization which stood behind this institutional aspect — we turn to the undertaking itself we believe that we clearly see in its language an intent to guarantee the actions of the *bank* rather than of the copartnership which at the moment happened to own it.    The principal in the undertaking is described

and throughout the instrument referred to by and under its institutional name of George W. Hallock Bank. The undertaking is executed by it as principal under this name "by W. N. Hallock, Cashier." The functions which are mentioned in the undertaking and guaranteed by its provisions are described in terms which in connection with the name inevitably suggest a corporate and continuing organization. Not a word is found which specifies or in our opinion suggests a copartnership or an intent to guarantee or be limited by the operations and organization of one. There seems to stand out with perfect clearness from the terms of the instrument the thought and guaranty that here was an institution engaged in receiving deposits and that it — the bank, the institution — would continue to repay for the few years of a county treasurer's term the deposits which were thus received. If as we think this was the intent of the sureties, and this is the fair interpretation of their engagement, then their liability was continuing and is not to be measured or limited by the rules which control an ordinary guaranty of a copartnership.

As the result of an examination of authorities, which manifestly has been of unusual thoroughness and discrimination, counsel cite to us many decisions for the purpose of sustaining their respective contentions.

In our opinion the cases of *Barclay* v. *Lucas* (K. B. 1786, 1 Term Rep. 292) and *Metcalf* v. *Bruin* (12 East, 400), cited by the appellant do quite directly support its appeal and the interpretation which we have placed upon the undertaking now before us.

In the first case a bond was given to a firm of private bankers which guaranteed the fidelity of a clerk while he should remain in the "shop" and "counting house." The firm having changed it was claimed that the liability of the surety was terminated by such change. It was, however, held to the contrary and that the liability and guaranty of the surety were continuing ones. In the

opinion, which was rendered by Lord MANSFIELD, stress was laid upon the words " shop " and " counting house " as indicating an intention upon the part of the surety to assume an obligation to the institution which would survive changes in the personnel of the firm and it was said: " The question in this case turns upon the intention of the parties at the time of entering into the contract. In questions upon intention we must look to the subject-matter of the contract. It is notorious that there are many banking houses in the city which continue for generations. This can only be done by a constant succession of partners; and even if they should not bear the same name with the first proprietors, yet still the house frequently continues under the original firm."

In the *Metcalf* case it appeared that a bond was given to secure the faithful performance by a clerk of his duties in a concern known as the Globe Insurance Company, which was not a corporation but an association of individuals. The contract was given to certain persons who were acting as trustees for them and it was held that it covered the services of the clerk during the continuance of the actual existing body of persons carrying on the same business under the same name, notwithstanding any intermediate changes of membership by death or otherwise. The court said: " The only question is as to the description of persons meant to be designated under the term company. I will begin, therefore, by translating that word according to the subject-matter, namely, the Globe Insurance Company; it meant a fluctuating or successive body of persons who should from time to time be carrying on the business of insurance under the name of the Globe Insurance Company. * * * Now, the persons constituting this company laboured at the time under an imperfection to contract, from the fluctuating nature of their body, and therefore, they constituted seven persons to be trustees for them; * * *. Those seven entered into this contract for the benefit of the

company; and if it had not been understood by the contracting parties that the company therein mentioned meant a fluctuating company, we must suppose that they contemplated that the bond might probably be gone in twenty-four hours; which never could have been meant; it must, therefore, have been intended to secure the faithful performance of the service to a succession of masters, who might from time to time constitute the company." (See, also, Childs on Guaranty, 209; Pingrey on Guaranty and Suretyship [Ed. of 1912], 99; *Gargan* v. *School Dist.*, 4 Colo. 53; *Chapman* v. *Beckington*, 12 L. J., N. S., 61, 68.) In our opinion the authority of the foregoing decisions and the soundness of the principles there applied are not overruled by the decisions cited by the respondent for that purpose. (*Burch* v. *De Rivera*, 53 Hun, 367; *Blackhouse* v. *Hall*, 6 Best & Smith, 507; *Strange* v. *Lee*, 3 East, 484; *Dry* v. *Davy*, 10 Adolp. & Ellis, 30; *Simson* v. *Cooke*, 8 Moore's Rep. 588; *Pemberton* v. *Oakes*, 4 Russell, 154; *Standard Oil Company* v. *Arnestad*, 34 L. R. Ann. 861; *Weston* v. *Barton*, 4 Taunt. 673; *Lyon* v. *Plum*, 14 L. R. Ann., N. S., 1231.) It is true that in each of these cases it was held that the obligation of the surety did not continue as was claimed by the parties seeking to enforce it and that in some of them the *Barclay* case was criticised or said to have been criticised. In all of them, however, it appeared that the undertaking of the surety was executed to or for certain specific individuals; that there was nothing from which there could be fairly inferred an intention upon the part of the surety to make his guaranty a continuing one to or for an institution like a bank and under such circumstances it was of course properly held that the liability of the surety was terminated by such a material change as the introduction of a new partner into or the withdrawal of an old partner from a partnership contemplated by his undertaking. Whatever was said in criticising the *Barclay* case was said in a case involving facts very

different than those set out in that case and not coming within the principles there laid down. This is amply illustrated by the *Burch* case, which is especially relied on.

In that case action was brought upon an undertaking guaranteeing a credit to be extended to " the House of J. De Rivera & Company of New York." The subject of the guaranty was a copartnership and before extension of the credit for which the action was brought upon the undertaking the personnel of the copartnership had been changed by death of one of the parties and it was held that the liability of the surety ceased with this change. While the undertaking in one place used the expression " House of J. De Rivera & Company " other language made it perfectly plain that the word " house " was used, as it not infrequently is, as a synonym for " firm " and under such circumstances it was necessarily held that the ordinary rules were applicable which applied to the guaranty of a firm when there had been a change in the membership thereof. Some of the things said in the opinion criticising the *Barclay* case were inaccurate and the criticism was dictum, because the decision in that case was placed upon entirely different facts than those in the case then being decided.

We, therefore, reach the conclusion that it was the intent of plaintiff, as measured by his written engagement in the light of surrounding circumstances, to guarantee that the banking institution which received the county deposits for a short time would repay them and that he never thought of a copartnership and never intended to limit his engagement to the one that so long as Mary H. Hallock and her grandson continued to be copartners and owners of the bank they would fulfill their obligations.

We have not overlooked the arguments of the respondent based on the wording of the designation of the bank filed by the county treasurer. We think that any significance which might otherwise be drawn from that rather minor and inconclusive circumstance must yield

to the larger and more decisive facts and considerations which have been discussed.

The views which we have adopted destroy the basis of plaintiff's action and render it unnecessary to discuss the further proposition urged by appellant that even upon an opposite interpretation of the bond the findings do not estblish any such mistake of fact as entitles plaintiff to recover.

The judgments appealed from must be reversed and the complaint dismissed, with costs in all courts.

COLLIN, CUDDEBACK, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.