GUMZ, Appellant, vs. UNITED STATES FIDELITY & GUARANTY COMPANY, Respondent.

*October 12—November 9, 1932.*

410

411

For the appellant there were briefs by *Gold & McCann,* attorneys, and *W. G. Sullivan* of counsel, all of Milwaukee, and oral argument by *Mr. Sullivan.*

For the respondent there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Maxwell H. Herriott* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott.*

NELSON, J.   From the allegations of the amended complaint, which, on demurrer, must be taken as true, it appears that the Armory Realty Company was about to execute and deliver to the National Bank of Commerce, as trustee, two trust mortgages covering certain lands to secure the payment of negotiable bonds aggregating the principal sum of $500,000; that the bank had agreed to purchase all of the bonds at the price mentioned on condition that Armory Realty Company as principal, and the defendant as surety, would, for the purpose of inducing the bank so to purchase said negotiable bonds, execute a bond for $100,000 conditioned that Armory Realty Company should complete the project then in process of construction substantially according to plans and specifications prepared by the engineer of the village of Shorewood and would "pay the cost of so completing said project, so that same when completed shall be free and clear of all mechanics', etc., liens;" that the bond was given to the bank as trustee for the equal and proportionate benefit of all owners and holders of any of the bonds at any time issued and outstanding and secured by said trust mortgages; that the trustee was authorized to collect, sue for, and recover any and all moneys at any time owing on said bond and should hold such funds as additional security for the payment of the negotiable bonds and dispose of and distribute same in accordance with the terms of said trust mortgages; that the proceeds of the bond might be used to pay any indebtedness existing to the trustee or others under the

terms of said trust mortgages; that the trustee might, in its sole discretion, use and apply all money collected by it under the bond to complete the project; that in case of the failure or neglect of Armory Realty Company diligently to complete the project the trustee might, in its discretion, take possession of the premises and carry forward the work of completing the project, and that the trustee might pay and expend any available part of the proceeds of the sale of the bonds toward the cost of completing such project. It further appears that the plaintiff thereafter entered into a contract with Armory Realty Company to perform certain grading work upon both the streets and the lots; that he performed such work; that he has not been paid therefor; that there is owing to him a balance of $4,000 for which he has obtained a judgment against the Armory Realty Company and that the company is insolvent. There is no allegation in the complaint to the effect that the plaintiff has, or claims to have, or was at the time of the commencement of this action, entitled to any mechanic's or other lien against the mortgaged property.

The question for decision is whether the surety contract herein, considering all of its provisions, in the light of the surrounding circumstances, was intended simply to protect the trustee mortgagee and the holders of the bonds against the specified liens which might, by operation of law, obtain priority over the mortgage liens, or was intended to protect as well all persons who might thereafter perform labor, or furnish materials, in or upon the lands composing said subdivision.

The law is well established that the liability of a surety is measured by his agreement, and is not to be extended by construction. Such a contract is to be interpreted by the same rules which are applicable to the construction of other contracts. The extent of his obligation must be determined from the language employed when read in the light of the

circumstances surrounding the transaction. *Ulster County Savings Institute v. Young*, 161 N. Y. 23, 55 N. E. 483. See, also, *Hill v. American Surety Co.* 200 U. S. 197, 26 Sup. Ct. 168; 50 Corp. Jur. p. 75.

Surety contracts are ordinarily construed strictly as to gratuitous sureties and less strictly as to paid sureties (*Builders L. & S. Co. v. Chicago B. & S. Co.* 167 Wis. 167, 166 N. W. 320), but when the language, given a fair and reasonable interpretation, shows the real intent of the parties and the purpose sought to be accomplished, that intent is controlling.

"The rule that the liability of a surety is to be strictly construed is so often reiterated with a very general sense of its true meaning that we perhaps may profitably recall just what its application is to such a case as this. It does not mean that in interpreting the undertaking of a surety we are to be governed by different fundamental rules than those which are applicable to the construction of another contract. And least of all does it permit us to cast aside the principle applicable to all contracts that in their interpretation we are to seek for the true intent of the parties who executed them. After that intent has been discovered and the meaning of the contract determined, it is of course true that the liability of a surety is to be strictly and rigidly limited by the scope and meaning of the instrument which he has executed (*People v. Backus*, 117 N. Y. 196, 22 N. E. 759; *Bennett v. Draper*, 139 N. Y. 266, 34 N. E. 791). In ascertaining that intention and construing the language which has been used in a contract of suretyship, as well as in another contract, that language is to be read in the light of the surrounding circumstances (*People v. Backus, supra*)." *Richardson v. County of Steuben*, 226 N. Y. 13, 19, 20, 122 N. E. 449, 450.

"While it is true that a surety cannot be held beyond the express terms of his contract, yet, in interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts. Such construction does not mean that words are to be distorted out of their natural meaning, or that, by implication, something can be read into the contract that it will not reasonably bear; but it means that

the contract shall be fairly construed, with a view to effect the object for which it was given, and to accomplish the purpose for which it was designed. The old rule of *strictissimi juris* applies only to the extent that no implication shall be indulged in to impose a burden not clearly inferable from the language of the contract, but does not apply so as to hold that the contract shall not be reasonably interpreted as other contracts are." *Sather B. Co. v. Arthur R. Briggs Co.* 138 Cal. 724, 72 Pac. 352. This language was quoted with approval in *Builders L. & S. Co. v. Chicago B. & S. Co., supra.*

Looking at the whole contract, the language of the recitation clauses as well as the language of the condition thereof, it seems clear that the plain and obvious intent and purpose thereof was simply to secure or protect the obligee and the holders of the bonds against possible claims for work done or materials furnished in or upon the subdivision which might be embodied in claims for liens and be entitled to priority over the two trust mortgages given to secure the bonds. No other conclusion seems reasonably permissible unless the language "shall pay the cost of so completing said project" be taken and considered alone, wholly disassociated and apart from the language "so that the same when completed shall be free and clear of all mechanics', etc., liens." To consider the language "shall pay the cost of so completing said project" alone and quite apart from the sentence in which it is found and without regard to what seems to us to have been the clear purpose to be accomplished by the bond, under the surrounding circumstances, would do violence to the established law applicable to the construction of instruments. Unfortunate as the plaintiff's situation is, we cannot impose a liability upon the defendant which defendant plainly did not assume.

The plaintiff has cited numerous decisions involving bonds furnished by contractors to owners and to municipalities under which third party laborers or materialmen were permitted to recover from the surety. These cases do not control the present case where the language of the bond reason-

ably construed is not broad enough to include the plaintiff's claim.

*Woodhead Lumber Co. v. E. G. Niemann Investments,* 99 Cal. App. 456, 278 Pac. 913, and *Johnston v. Lindsey,* 183 Ark. 466, 36 S. W. (2d) 396, strongly relied upon by the plaintiff, are cases involving bonds given to mortgagees in which third party materialmen were permitted to recover from the surety. Both of those cases are clearly distinguishable from the case at bar. The language of the bonds and consequently their meaning are quite different. The bond in the *Woodhead Case* was conditioned that the owner should "indemnify the obligee (the mortgage company) against any and all loss directly arising by reason of the failure of the principal to fully complete said apartment building as per plans and specifications on file with the California Mortgage Company, and shall also pay in full the claims of all persons performing labor upon or furnishing materials to be used in such work." The bond in the *Johnston Case* was conditioned that the owner would "fully pay off and discharge all indebtedness incurred in the said construction to contractors, subcontractors, mechanics, laborers, materialmen, and any and all others who might in the absence of such payment obtain a lien on the real estate or building."

In neither of those cases did the language of the bond suggest that the work or project was in process of construction at the time the loans were made and the language of each bond was amply broad to include materialmen within its protection.

We conclude that since the provisions of the bond, fairly and justly construed, were not broad enough to include the plaintiff's claim, his complaint does not state a cause of action and that the demurrer was properly sustained by the trial court.

*By the Court.*—Order affirmed.