# Richmond

BRISTOL STEEL AND IRON WORKS, INCORPORATED, V. R. FLOYD
PLANK, B. W. WHITSETT, MRS. ELIZABETH TEMPLE
PLANK AND RUTH C. WHITSETT.

January 17, 1935.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and
Chinn, JJ.

The opinion states the case.

*S. Bruce Jones* and *Wm. H. Woodward,* for the plaintiff in error.

*John P. Saul, Jr.,* and *Robert C. Jackson,* for the defendants in error.

BROWNING, J., delivered the opinion of the court.

This case was submitted to the court for its judgment upon an agreed statement of facts, which are as follows:

"1. On or about the 23rd day of April, 1929, Morris C. Miller and H. Andrew Miller, his son, doing business as Morris C. Miller and Son, entered into an agreement for the construction of a theatre and store building for the Blacksburg Realty Corporation in Blacksburg, Virginia, which agreement is on the standard form of agreement between the contractor and owner, issued by the American Institute of Architects. * * *

"2. Morris C. Miller and Son purchased from the plaintiff structural and reinforcing steel, material and supplies in the amount of $7,424.17, on which nothing whatever has been paid, and the amount due by the said Morris C. Miller and Son to the plaintiff is $7,424.17, with interest from the first day of January, 1930, until paid. The articles were purchased under an agreement made between Morris C. Miller and Son and the plaintiff after the agreement of April 23, 1929, and were installed and used in the construction of said building.

"3. On the 13th day of December, 1929, the defendants executed and delivered to the Virginia Trust Company in Richmond, Virginia, the bond described in the notice of motion. * * *

"4. No payment for the materials and supplies furnished was made by Morris C. Miller and Son to the plaintiff, and nothing has been, or will be realized from the mechanic's lien filed by the plaintiff against the real estate of the Blacksburg Realty Corporation. The Blacksburg Realty Corporation, however, paid the contractor, Miller, in full. The Virginia Trust Company has made and is not now making any claim against the sureties on said bond.

"5. The contractor made application for payments, as required by article 24 of the contract, and the architect issued certificates therefor covering the installation of all of the structural and reinforcing steel, and all other materials, which was sold and furnished to the said Morris C. Miller and Son by the plaintiff at the price of $7,424.17.

"6. The four defendants have been from the beginning and are now, the principal stockholders of the Blacksburg Realty Corp.

"7. The claim of the plaintiff is a part of its capital, and as such is not required to be listed for taxation in the State of Virginia."

The court dismissed the plaintiff's notice of motion and entered judgment for the defendants.

In April, 1929, Morris C. Miller and Son entered into a contract with the Blacksburg Realty Corporation for the construction of a theatre and store building in Blacksburg, Virginia, and in December, 1929, the defendants, who are the defendants in error here, and who are the principal stockholders and owners of the Blacksburg Realty Corporation, and Morris C. Miller, as principals and sureties, entered into a bond with the Virginia Trust Company of Richmond, Virginia, by which they guaranteed the faithful performance of the contract.

The conditions of the bond are as follows: "The conditions of this obligation are such that, Whereas, the said

Morris C. Miller, by a certain contract bearing date of April 23, 1929, hath contracted and agreed with the Blacksburg Realty Corporation, for the consideration therein expressed, to erect and build on a piece of ground situated on College avenue, Blacksburg, Virginia, a certain theatre and store building therein described, in such manner and form, and at or within such time, as in said articles of agreement and in the specifications thereto annexed, and certain plans, elevations, and sections, in the said specifications and articles referred to are particularly mentioned and set forth, and whereas it was and is agreed that the said Morris C. Miller, as principal and sureties whose names are signed hereto, should enter into the above written bond or obligation to the end that the Virginia Trust Company might be secure in placing a first mortgage lien on said premises, thereby advancing money to be used in financing said building: Now, the condition of the above written bond or obligation is such that if the above bounden principal, his executors, and administrators, do and shall erect and build, complete and finish, the said building herein described in and by the said articles of agreement contracted to be erected and built at or within the time therein expressed for completion, and also do, and well and truly observe, perform, fulfil and keep, all and every the covenants, contracts, clauses, articles, and agreements, contained in the said articles of agreement, and which, by or on the part of the said Morris C. Miller, principal, his executors, or administrators, are or ought to be observed, performed, fulfilled, and kept, within such times and in such manner in all respects as in the said articles of agreement are mentioned or required according to the true intent and meaning of the said articles of agreement, and according to the aforesaid specifications, plans, elevations, sections and drawings therein referred to, then the above written bond or obligation shall be void and of no effect; but otherwise shall be and remain in full force and virtue."

The articles of the agreement, which are incorporated in the bond by reference, provide in part as follows:

"Article 37. The contractor agrees: (e) To pay the sub-contractor, upon the issuance of certificates, if issued under the schedule of values, described in article 24 of the general conditions, the amount allowed to the contractor on account of the sub-contractor's work to the extent of the sub-contractor's interest therein."

"Article 1(e). The term 'work' of the contractor or sub-contractor includes labor or materials or both."

In the determination of this case we are confronted by a single question of law.

Are the defendants, as sureties on the bond, liable to the plaintiff for materials furnished by it, and used in the construction of the building?

▇ The bond and the contract must be read and considered together in solving this legal problem. The contract by very definite and explicit terms is referred to in the bond and by its intendment and words is a part thereof.

The defendants urge that the bond creates no liability upon them to the plaintiff because it was a transaction between themselves and the Virginia Trust Company, executed months after the construction of the building had begun and that its purpose was to secure to the Virginia Trust Company, as a first lien, a large sum of money furnished by it to be used in financing the building; that it was aimed to insure to the Trust Company the completion of the building within the time specified and protect it from the annoyance and expense from the filing of mechanics' liens against the building, and not to in any way inure to the benefit of materialmen.

Litigation involving the solution of legal questions similar to the one here has long vexed the courts. The volumes of reports of the courts of last resort teem with cases, varying in form and circumstance, but some of them similar enough to the present case to furnish a safe guide to its correct decision.

The decisions present a conflict of authority, and there has been a decided contrariety of judicial expression.

We quote the following from the learned annotation ap-

pended to the case of *Fidelity & D. Co. v. Rainer for Use of Manufacturers' Warehouse Co.*, 220 Ala. 262, 125 So. 55, in 77 A. L. R. page 13:

"The theory on which laborers, materialmen, and subcontractors are permitted to sue the surety on a contractor's bond conditioned for their benefit is based upon the principle of modern American jurisprudence that, when a promise is made to one, upon a sufficient consideration, for the benefit of another, the latter may sue the promisor for a breach of his promise. *Leslie Lumber & Supply Co. v. Lawrence* (1928), 178 Ark. 573, 11 S. W. (2d) 458.

"This doctrine has been the subject of much controversy; but, after three quarters of a century of development and extension, it is now recognized by the overwhelming weight of authority in the United States."

And from the same annotation, quoting from Street's Foundations of Legal Liability, vol. 2, pp. 152 *et seq:* "The controversy over the right of a stranger to the consideration to sue upon a promise made for his benefit involves, perhaps, the most momentous issue raised in the law of contract since the decision of *Slade's Case* (1602), 4 Coke, 94, 76 Eng. Reprint, 1076. The fact that the battle is still going on renders it of surpassing interest. On the one side is the theory on which assumpsit was originally based. On the other is the consciousness that the legal remedy upon a simple contract should be as broad as the contractual obligation. Around these two standards the contending forces are marshaled. It is not difficult, we believe, to indicate the side to which victory inclines. The common-law theorist may, in a few words, dispose of the right of a stranger to sue upon a contract made for his benefit. Legal evolution is, however, against him. The introduction of the civil action as the sufficient remedy in all cases where the facts show legal liability has determined the issue."

The following taken from the annotator's notes, 77 A. L. R., *supra,* are in point and are sustained by the cases cited: "Where the public contractor's bond is conditioned for the benefit of laborers and materialmen, 'the third party need

not be ascertained or known at its inception to entitle him to the benefits thereof. The third party may adopt it when he becomes informed, and may enforce it at law as if originally made by his express authority.' *R. Connor Co.* v. *Aetna Indem. Co.* (1908), 136 Wis. 13, 115 N. W. 811."

"If the terms of the bond necessarily require the payment of persons furnishing materials or performing labor, then the bond, and hence the parties thereto, contemplate a benefit to laborers and materialmen, and this should be sufficient to enable the latter to recover on the bond, although the condition for the payment of such persons also works to the advantage of the nominal obligee in the bond (see *Federal Union Surety Co.* v. *Com.* (1910), 139 Ky. 92, 129 S. W. 335, *infra; Jordan* v. *Kavanaugh* (1884), 63 Iowa 152, 18 N. W. 851, *infra*), and although the actual purpose motivating the parties in inserting such condition in the bond was the purely selfish one of protecting themselves, rather than of benefiting the third parties. In other words, so long as the bond necessarily and directly benefits third persons, it is immaterial that this protection was afforded them, not as an end in itself, but for the sole purpose of securing to the obligee some consequent benefit or immunity. In short, the motive, purpose or desire of the parties is quite a different thing from their intention. The former is immaterial; the intention, as disclosed by the terms of the instrument, governs."

"Thus, where a private contractor's bond for the faithful performance of a building contract refers to the contract and makes it a part of the bond, and the contract in turn refers to the specifications and makes them a part of the contract, the bond, the contract, and the specifications are all to be construed together. *National Surety Co.* v. *Rochester Bridge Co.* (1925), 83 Ind. App. 195, 146 N. E. 415; *City Nat. Bank* v. *Independent School Dist.* (1920), 190 Iowa 25, 179 N. W. 947.

"If, when the contract and the bond are construed together, the payment of claims for labor and materials is provided for, laborers and materialmen may resort to the

bond, although, if construed apart from the contract, the bond does not provide for their payment. *Daughtry* v. *Maryland Casualty Co.* (1931, C. C. A. 4th), 48 F. (2d) 786."

It is stated in the annotation referred to that there is "little or no distinction between public and private contractor's bonds, as regards the rights of laborers and materialmen."

On this point see *Standard Oil Co.* v. *National Surety Co.*, 234 Ky. 764, 29 S. W. (2d) 29; *Ochs* v. *M. J. Carnahan Co.*, 42 Ind. App. 157, 76 N. E. 788, 80 N. E. 163; *Globe Indem. Co.* v. *Jackson Mill & Lumber Co.*, 24 Ohio App. 1, 156 N. E. 528.

Again it is said by the annotator: "The great weight of authority establishes the general rule that a person furnishing materials or labor may recover on a building contractor's bond to the owner, where it contains a condition for their benefit and is intended for their protection, although the owner is the only obligee named in the bond, and there is no express provision that it shall inure to the benefit of laborers or materialmen, or that they may avail themselves of the security thereof."

This is supported by an array of authorities found in the text of the note.

In the case of *Dixon & Wright* v. *Horne,* 180 N. C. 585, 105 S. E. 270, it was held that a person supplying materials and labor to a contractor was entitled to recover on the contractor's bond to the owner, conditioned for the faithful performance of the contract, and to satisfy all claims and demands incurred for same.

The court in *Johnston* v. *Lindsey,* 183 Ark. 466, 36 S. W. (2d) 396, held that a materialman could recover against the surety on a bond given by the owner of property to a building and loan association, conditioned for the construction of a building on the owner's lot at a cost of not less than a certain sum, and for the full payment and discharge of all indebtedness incurred to contractors, sub-contractors, me-

chanics, laborers, materiàlmen, "and any and all others who might, in the absence of such judgment, obtain a lien on the real estate or building," the court stating that the same principles supporting the recovery by such persons on the ordinary contractor's bond given to the owner applied also to a bond executed by the owner to a building and loan association.

See also *Woodhead Lumber Co.* v. *E. G. Niemann Investments*, 99 Cal. App. 456, 278 P. 913.

The Virginia cases: *Aetna Cas. Co.* v. *Earle-Lansdell Co.*, 142 Va. 435, 129 S. E. 263, 130 S. E. 235; *Fidelity & Dep. Co.* v. *Bailey-Pleasants Co.*, 145 Va. 126, 133 S. E. 797; *Fidelity & Dep. Co.* v. *Bailey-Spencer Hdw. Co.*, 145 Va. 133, 133 S. E. 799; *Fidelity & Dep. Co.* v. *Mason*, 145 Va. 138, 133 S. E. 793, involve public works and statutory bonds but they show that the trend of this court is to construe contractors' bonds liberally in favor of materialmen.

Section 5143 of the Virginia Code of 1930 is in part as follows: " * * * and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only, and the consideration moved from him to the party making such covenant or promise * * *."

In *Montague Mfg. Co.* v. *Homes Corp.*, 142 Va. 301, at page 312, 128 S. E. 447, 450, the court says, with respect to this section: "The statute is highly remedial and should be liberally construed in order to accomplish the ends manifestly intended."

The bond in question embodied a two-fold purpose, the protection of the Trust Company to the extent provided, and the benefit and protection of the materialmen. This conclusion is inescapable, we think, when the bond and the contract are read and considered together, as they must be.

The authorities cited amply support this conclusion. We

reverse the judgment of the trial court and enter judgment for the plaintiff in error.

*Reversed and judgment entered.*

HUDGINS, J., dissenting.

Some eight months after the owner and contractor had executed the building contract, and after the contractor had done substantial work on the building, the owner applied to the Virginia Trust Company for a loan, offering as security a deed of trust on the building then in course of construction. The Virginia Trust Company agreed to make a loan of $30,000, provided the owner would execute a deed of trust on the lot and building, and the bond here in question.

These papers were duly executed and the money paid to the owner. The object that the parties had in mind in executing these papers was two-fold: (1) To guarantee the completion of the building; (2) and to create a first lien on the property.

This appears on the face of the bond, and the same intention is expressed in a letter written by the attorneys for the Virginia Trust Company at the time they requested the bond to be executed. This letter reads as follows:

*Exhibit "A."*

"Post Office Box 263                                    Telephone 938

"BIRCHFIELD & BIRCHFIELD
"Attorneys and Counsellors at Law
"508-509 Mountain Trust Bank Bldg.
"Harris S. Birchfield                                    Roanoke, Va.
"Howard P. Birchfield                         November 29, 1929.

"MR. R. F. PLANK,
"Blacksburg, Virginia.

"Dear Sir:
"Enclosed please find bond for you, R. C. Whitsett, Elizabeth Temple Plank, Ruth C. Whitsett and Morris C. Miller

to sign. Please have same signed by all parties and return to me promptly so that we may proceed to close the loan on your theatre.

"As I explained to you in our conversation last week, this bond is only for the purpose of guaranteeing to the Virginia Trust Company that their deed of trust will be a first and prior lien on the theatre, and above all things to guarantee to the Virginia Trust Company that the theatre will be completed so that the theatre will bring in revenue from rent as per schedule you sent them. In all cases where we make loans on uncompleted buildings and advance money before completion, we require bonds of this nature. You can readily see that the reason for this is that we do not want a loan on a building that has not been completed.

"This bond is meant to run just long enough to be sure the building is completed and that the deed of trust is a first and prior lien, at which time the bond is to be void as all provisions and purposes intended will have been complied with.

"Yours very truly,

"HOWARD P. BIRCHFIELD."

Plaintiff furnished to the contractor a part of the materials used in the building before the bond was executed and a part thereafter, and in due course perfected a mechanic's lien on the building. It later developed that the owner had paid the contractor in full, and according to the terms of his contract. Hence, the mechanic's lien was of no value to plaintiff. It then ascertained for the first time that this bond was held by the Virginia Trust Company and soon after ascertaining this fact instituted, in its own name, this action, on the bond, for value of materials it had furnished on the credit of, and to, the contractor.

It is well settled that the liability of a surety is measured by his agreement and cannot be extended by construction. This is true whether a surety contract is construed strictly as to gratuitous sureties or less strictly as to sureties for hire. The language used is to be given a fair and reason-

able interpretation, viewed in the light of all the circumstances surrounding the transaction. The real intentions of the parties and the purpose sought to be accomplished is controlling in the interpretation of all contracts. *Kirschbaum* v. *Blair*, 98 Va. 35, 34 S. E. 895; 77 A. L. R. 42 *et seq.* See, also, *National Surety Co.* v. *Com.*, 125 Va. 232, 99 S. E. 657; *United States, for Use of Hill* v. *Surety Co.*, 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; *Bennett* v. *Draper*, 139 N. Y. 266, 34 N. E. 791; *Richardson* v. *County*, 226 N. Y. 13, 122 N. E. 449; *Sather Banking Co.* v. *Briggs Co.*, 138 Cal. 724, 72 Pac. 352; *Builders', etc., Co.* v. *Chicago, etc., Co.*, 167 Wis. 167, 166 N. W. 320; *Gumz* v. *Fidelity & G. Co.*, 209 Wis. 408, 245 N. W. 82.

The bond was not given in compliance with any statute requiring that it be furnished for the benefit of laborers and materialmen and hence, the decisions of the *Aetna Casualty Co.* v. *Earle-Lansdell Co.*, 142 Va. 435, 129 S. E. 263, 130 S. E. 235, and *Luck & Sons* v. *Boatwright*, 157 Va. 490, 162 S. E. 53, are not applicable.

The Blacksburg Realty Corporation is the owner. Morris C. Miller was the contractor. Persons furnishing labor and material in the construction of this building had protection under the law, by way of notice and a mechanic's lien.

The owner before the building was completed desired to borrow money offering the lot and building as security. The lender knew that unpaid laborers and persons who furnished material used in the building had a right to obtain a lien on the property which, if perfected, would constitute a prior lien to the deed of trust contemplated. It was to protect itself against such a contingency that the lender required the bond in question. The sureties were willing to obligate themselves to pay any mechanic's lien which might be perfected on the property in order to preserve the lien, evidenced by the deed of trust, but they apparently did not intend to bind themselves further than this.

The language of the bond is plain and unambiguous, and expressly declares that Miller and the defendants, as sureties, "should enter into the written bond or obligation

to the end that the Virginia Trust Company might be secured in placing a first mortgage lien on said premises." When the language of the bond is considered, as it must be, in the light of all the circumstances under which it was executed and the relations in which the parties stood to each other, it is reasonably clear that neither of the parties to the bond gave any thought to the interest or welfare of those who might become interested as laborers or materialmen further than to afford protection against liens which might impair the security created by the deed of trust.

"To say that an entire stranger to the contract, who knew nothing of it at the time of its formation, who did not share in the consideration, and whose interests were probably not thought of, is a real party in interest, is to confuse fancy and fact. * * * To give the bond the strained construction suggested by materialmen would be indicative of judicial paternalism." *Maryland Casualty Co.* v. *Johnson* (D. C.), 15 F. (2nd) 253, 255.

It seems clear to me from the terms of the bond as a whole, from the surrounding circumstances at the time it was executed, and the relation of the parties to each other and to the subject matter, that the sole intention of the parties was to secure to the obligee a first mortgage on the property. It was contemplated this result should be accomplished in two ways: (1) By the completion of the building according to plans and specifications; (2) to keep it free and clear of any mechanics' liens which might affect the security. This object and purpose has been fully attained and performed. The Virginia Trust Company could not and it is not undertaking to maintain any action on the bond. It is not, in the language of the trial judge, "remotely incidental to any of these purposes, that the sureties become liable to general open account creditors of the contractor." Any judgment that such creditors might obtain against the owner or the general contractor would not impair the security of the deed of trust lien.

The Virginia Trust Company owed no legal or moral obligation, either fixed or contingent, to see that such credi-

tors were paid. The majority opinion entirely ignores the fundamental requirement of Code, section 5143, namely, that in order for a person, not a party to the contract, to maintain an action thereon, the covenant or promise must be made for the benefit in whole or in part of such person. To hold otherwise reads into the contract an intention which was not in the minds of either the obligee or obligors.

During the argument of the case some question was raised as to whether the stipulation of counsel and the evidence taken before the trial court was properly authenticated for the purpose of making it a part of the record. Even if this was not done, the result would be the same, as it does not affirmatively appear from the pleadings that the bond upon which the action is based was executed for the benefit of plaintiff.

I think, therefore, that the judgment of the trial court is plainly right, and should be affirmed.

EPES, J., concurs in this dissent.