# Richmond

CHARLES L. BOOKMAN v. CAVALIER COURT, INCORPORATED.

June 18, 1956.

Record No. 4531.

Present, All the Justices.

The opinion states the case.

*H. Armistead Boyd* (*Bowles, Anderson & Boyd*, on brief), for the plaintiff in error.

*Joe T. Mizell, Jr.* (*Robert B. Gayle*, on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

Action was instituted by Cavalier Court, Incorporated, hereinafter called Cavalier, against Charles L. Bookman to recover the sum of $621. It was asserted that $540 was owing by Bookman for nine

months rent at $60 per month of premises No. 1402 Warwick road, and $81 attorney's fees provided for in the lease.

Bookman denied indebtedness to Cavalier and filed a counterclaim in which $180 represented rent theretofore paid and $392 damages, all asserted to be due him by Cavalier because of its alleged breach of the lease.

Verdict for $392 was returned by the jury for Bookman, but upon Cavalier's motion, the verdict was set aside and judgment entered *non obstante verdicto* for Cavalier for $621. Bookman appealed and seeks reversal of the judgment and reinstatement of the verdict rendered in his favor.

All conflicts in the evidence and just inferences therefrom have been resolved in Bookman's favor by the verdict, and we review the evidence in the light most favorable to him.

Cavalier is the owner of three adjoining store buildings described as Nos. 1402, 1404, and 1406 Warwick road, Chesterfield county, Virginia, but No. 1406 is not involved in this proceeding. Prior to August, 1953, premises 1402 and 1404 had been leased by Cavalier to Harry Kalousdian under leases that expired September 1, 1953, and he had been operating a grocery store in No. 1402 and a confectionery and sundry drug store in No. 1404.

In early August, 1953, Bookman heard that Kalousdian planned to close out his grocery business, and negotiated with him to acquire the stock of groceries and equipment at No. 1402, but they did not come to terms. Thereafter, but prior to August 13, 1953, Bookman contacted L. E. Walton, Cavalier's agent, and as a result of negotiations, 1402 Warwick road was leased to Bookman by Cavalier by lease dated August 13, 1953, at a rental of $60 per month for a term of twelve months, beginning September 1, 1953. This lease let the premises "to be used as and for a grocery store," and not "to be used during the term for any other purpose * * *." It also contained the following express covenant:

"It is understood and agreed between the parties hereto that the lessors, Cavalier Court, Inc., will not rent any of the stores in this group for a grocery store."

Thereafter Cavalier's agent, Walton, leased 1404 Warwick road to Kalousdian by lease dated August 18, 1953, for a term of six months beginning September 1, 1953. This lease let the premises "to be used as and for a confectionery and sundry drug store" and not

"to be used during the said term for any other purpose * * *." It also contained the following express covenant:

"It is understood and agreed between the parties hereto that the lessors Cavalier Court, Inc., will not rent any of the stores in this group for a confectionery and sundry drug store."

Between August 13, 1953, and September 1, 1953, Kalousdian moved his stock of groceries, meat refrigerator, counters and other equipment theretofore used in the grocery store at No. 1402 to No. 1404, and shortly after September 1, 1953, Bookman learned that Kalousdian was selling groceries from the latter premises. He complained and made those facts known to Walton, and Cavalier promptly instituted suit in the circuit court of Chesterfield county against Kalousdian for an injunction to restrain him from selling groceries from premises, 1404 Warwick road.

In the bill Cavalier alleged among other things that Kalousdian violated his lease with Cavalier by selling groceries in premises No. 1404 "which type of business is being conducted by another tenant in an adjoining store under" an exclusive lease for that business, and that by reason of Kalousdian's violation of the use of premises No. 1404, irreparable injury was being caused Cavalier, and it had "no adequate remedy at law."

On September 5, 1953, Kalousdian was temporarily enjoined from engaging in the grocery business at 1404 Warwick road, and shortly thereafter the injunction was made permanent. About the middle of September, 1953, Bookman opened his grocery at No. 1402 and paid rent for the months of September, October and November as it accrued. After the injunction was awarded, Bookman learned that Kalousdian was continuing to sell groceries from No. 1404, complained to Walton of that activity and communicated that fact to Cavalier's attorney by letter under date of September 29, 1953. However, further violation of the injunction by Kalousdian was observed at times during November, 1953. Bookman testified that on October 31 he closed his grocery store, moved out on November 15, 1953, and did not pay rent for the last nine months of his lease.

Do the proved facts sustain a finding that Cavalier breached its covenant with Bookman? If so, the judgment should be reversed and the verdict for Bookman reinstated.

The meaning and legal effect of Cavalier's covenant, and the scope of Cavalier's obligations thereunder to Bookman must be determined

and the facts then weighed to ascertain whether or not the finding by the jury that Cavalier breached its covenant was justified.

"A lessee has various remedies against his landlord for the breach of a covenant or restriction binding the landlord not to use or lease other premises which he owns for purposes stipulated in the lease. The breach of such a provision will justify the lessee in rescinding his contract and surrendering possession of the property; in such case he is not liable for further rent. His most efficacious remedy is by way of invocation of the jurisdiction of equity for an injunction restraining the lessor from breaching the covenant; courts of equity have not hesitated to enforce by injunction a covenant assuring the lessee the sole or exclusive right of conducting a certain kind of business on the landlord's property. Another alternative is for the lessee to treat the violation of the covenant by the lessor as putting an end to the contract for purpose of the performance and sue for damages; and it is held that the right to enforce specifically against the competitor a covenant in a lease that no competing business shall be located on the adjacent premises of the lessor does not exclude an action against the lessor for damages for breach of covenant." 32 Am. Jur., Landlord and Tenant, § 159, p. 155. 51 C. J. S., Landlord and Tenant, §§ 246, 247, pp. 871, 874.

The covenant in Bookman's lease that he asserts was breached by Cavalier is restrictive of the use of other property owned by Cavalier, and its meaning and scope may not be enlarged or extended beyond that clearly indicated by its language and shown to have been intended by the parties. 51 C. J. S., Landlord and Tenant, § 238, p. 865. It should be construed in the light of the conditions and circumstances existing at the time and as it was understood and acted upon by the parties so as to effectuate the objects contemplated by them when it was executed.

No enlargement of the usual import and purpose of the phraseology is justified to include what might and ought to have been expressed, if intended by the parties. 11 M. J., Landlord and Tenant, §§ 9, 10, pp. 650, 653.

Literally, the covenant was that Cavalier would not lease any other store in the group for a grocery store. However, its reasonable construction and the construction that the parties appear to have placed upon the covenant was that Cavalier would include in its lease of No. 1404 a covenant that would forbid the tenant of those premises from

operating a grocery store thereon, and Cavalier would use reasonable legal means to enforce such restriction in case of its breach.

There is nothing to indicate that Bookman did not acquiesce in and approve of Cavalier's institution of the injunction proceedings to restrain Kalousdian from selling groceries at No. 1404.

He now complains that Cavalier should have resorted to other and further action and was obligated to save him harmless from illegal and harmful competition by Kalousdian. It must be remembered that under § 55-22, Code of 1950,[1] Bookman as a beneficiary under the covenant in the lease from Cavalier to Kalousdian, could have brought a suit himself against Kalousdian to restrain him from selling groceries from No. 1404. *Horney* v. *Mason*, 184 Va. 253, 35 S. E. 2d 78; *Bristol Steel Works, Inc.* v. *Plank*, 163 Va. 819, 178 S. E. 58; *Montague Manufacturing Co.* v. *Homes Corporation*, 142 Va. 301, 128 S. E. 447.

For decisions in other jurisdictions pertaining to this subject, see *Berman* v. *Bergenfield Plaza, Inc.*, 16 N. J. Super. 520, 85 A. 2d 222; *Nagy* v. *Ginsberg*, 282 App. Div. 842, 124 N. Y. S. 2d 400; *Rosen* v. *Wolff*, 152 Ga. 578, 110 S. E. 877; *The Pyle & Allen Co.* v. *The Hippodrome Building Co.*, 23 Ohio Cir. Ct. N. S. 331; *Benjamin* v. *Stanley Co. of America*, 37 F. 2d 904 (Pa.); 81 A. L. R. 1271; 90 A. L. R. 1469.

However, Bookman took no action, but relied solely upon Cavalier and looked to it to save him harmless from wrongful competition by Kalousdian, and when dissatisfied with the results obtained, vacated the premises and refused to pay rent.

Bookman relies upon the decision of *Krikorian* v. *Dailey*, 171 Va. 16, 197 S. E. 442, but there the facts were materially different from those presented in the record now before us.

Premises designated respectively 509 North Ryland street and 1039 West Grace street adjoin each other at the corner of Ryland and Grace streets. Krikorian, the owner of both premises, rented to Dailey No. 509 North Ryland street in which Dailey had been con-

---

[1] "An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. * * *"

ducting a confectionery for years. In the lease was the following covenant, "Lessor will not lease the property 1039 West Grace for a confectionery during this lease."

Before Dailey executed this lease, he informed Krikorian that he would consider the renting of 1039 West Grace for a drug store a violation of the covenant. However, after Dailey signed his lease, Krikorian contacted a rental agent who advertised that it had suitable property to rent for drug store locations. Later this agent effected rental of 1039 West Grace street to J. W. and D. P. Chamblee for a term of six years. No restriction was placed in that lease against use of the premises for sale of confections. In the Chamblee store not only were drugs sold, but practically all of the goods carried in stock by Dailey, and his business was seriously injured by the competition.

In construing the covenant in Dailey's lease and holding that it had been violated, we said:

"That this [covenant] was intended to relieve Dailey from a measure of competition is perfectly plain, otherwise, it would be meaningless. If a confectionery was established in the Grace street store, it has been violated.

"In Webster's New International Dictionary a confectionery is defined as 'a place where confections are made or kept.'

"It is not disputed that confections were kept for sale by the Chamblees. Indeed, it is shown by the record, and it is a matter of common knowledge, that a large part of the business of drug stores today consists of the sale of things other than drugs. Their character has changed within our recollection, and they are no longer merely chemists's shops. From the evidence it appears that the sale of merchandise carried by Dailey and afterwards carried by the Chamblees so cut into the former's business as to reduce him to bankruptcy." At page 25.

The vital difference in the two cases is that in the *Dailey* case, Krikorian, the lessor, inserted no restriction for Dailey's protection in his lease to the Chamblees. On the contrary, he leased the premises to them well knowing that they intended to conduct a drug store and that most of the merchandise carried in stock and sold by Dailey would be sold from 1039 West Grace street. Krikorian having knowingly placed no restrictive covenant in the lease to the Chamblees as he was in good faith and legally obligated to do, and they having sold confections in competition with and to the damage of

Dailey, it was clear that Krikorian breached his covenant with Dailey when the lease with the Chamblees was executed.

Cavalier's covenant with Bookman did not bind it to save Bookman harmless from any and all wrongful breaches by Kalousdian of his covenant with Cavalier not to operate a grocery store. *Ashby* v. *Wilson* (1900), 1 Ch. 66; *Benjamin* v. *Stanley Co. of America, supra.* The protective covenant with Bookman (and the *protective* covenant in Kalousdian's lease) was not intended to guarantee or insure the lessee against loss from illegal and unlawful breaches of the restrictive covenant placed in Kalousdian's lease for the protection of Bookman, but it was intended to afford him the legal right and means to protect himself against illegal and injurious competition by the other lessee.

Cavalier, having in good faith placed the restrictive covenant in Kalousdian's lease under which Bookman could have sought and obtained adequate relief against Kalousdian, we need not determine whether or not Cavalier was obligated to institute the injunction suit. Yet when Bookman complained, it promptly did so and obtained a permanent injunction against Kalousdian forbidding him to sell groceries from No. 1404. Certainly that prompt exercise of good faith and diligence through legal proceedings deemed appropriate was the full measure of Cavalier's obligations under its covenant to Bookman.

The evidence fails to establish that Cavalier breached its covenant with Bookman, and the judgment is

*Affirmed.*