# CIRCUIT COURT OF ROCKINGHAM COUNTY

Trawood, L.L.C.

v.

A/H Port Crossing
Associates, L.L.C.,
and Purple Dawg
Enterprises, Inc,
t/a Purple Dawg Pizza

January 28, 2000

Case No. (Chancery) CH99-17666

BY JUDGE JOHN J. MCGRATH, JR.

This case is currently before this court on Plaintiff's motion for a temporary injunction and defendants' demurrer to Plaintiff's Bill of Complaint. The facts of this case are virtually undisputed and are as follows. In October of 1998, the Defendants, A/H Port Crossing Associates, L.L.C. (A/H) and Purple Dawg Enterprises ("Purple Dawg") entered into a lease in which A/H agreed to lease a space on one end of a new shopping center called "Port Crossing" to Purple Dawg. Purple Dawg was to be an Italian restaurant, offering sit-down dining, delivery, and carry-out of various pasta dishes, pizza, subs, appetizers, deserts, and alcoholic beverages. During the spring of 1999, A/H and Purple Dawg began the work necessary to prepare the space for business. Because of problems and delays caused by A/H, Purple Dawg did not open for business until October 7, 1999. Sixty percent of Purple Dawg's business is dine-in, and forty percent is split between delivery and carry-out.

In October of 1998, after Purple Dawg had entered into its leasing agreement with A/H, a representative of Trawood, L.L.C., became interested

in leasing a space in the Port Crossing shopping center to operate a "Little Caesar's" delivery and carry-out pizza restaurant. Upon contacting A/H and inquiring about this possibility, Trawood was informed that an "upscale" Italian restaurant would also be doing business in the Port Crossing shopping center. Following this conversation and following negotiations regarding a leasing contract, A/H and Trawood signed a contract for A/H to lease a space in Port Crossing to Trawood for the operation of a Little Caesar's Restaurant. As part of these negotiations, Trawood asked for, but did not receive, an "exclusivity" provision in the lease providing that Little Caesar's would "be the exclusive pizza retailer in the demised premises except that other tenants may sell pizza so long as pizza is an incidental part of their food sales (less than 10% of gross sales)." A/H refused this provision, because, as they informed Trawood, an Italian restaurant had already signed a lease for another space in Port Crossing. Despite this, the two parties did agree to a different exclusivity provision that states "Landlord, to the best of its ability, will not lease to a tenant whose primary use would be directly competitive with the carry-out and delivery portion of Tenant's business." (See Lease between A/H and Trawood, ¶ 4.) Little Caesar's immediately began the process of preparing the space for business; they subsequently opened at the end of August 1999.

Trawood claims that they were not aware of the nature of Purple Dawg's business until a sign reading "Purple Dawg Pizza" appeared on the front of the building around the beginning of September. Furthermore, Trawood claims that once Purple Dawg opened for business in October, Little Caesar's business declined by almost 50%. They claim that this decline is due to the competition that Purple Dawg is providing to Little Caesar's pizza sales. Trawood maintains that A/H is in direct violation of the exclusivity clause included in their lease, and, as such, they are entitled to the relief they are seeking in this court.

Count I of Trawood's Bill of Complaint requests this court to enjoin A/H from leasing any portion of its property at Port Crossing to Purple Dawg "so long as Purple Dawg engages in the carry-out and delivery of pizza and other related items, including Italian specialty items, bread products, and sandwiches directly in competition with Plaintiff's business." This request is based on the exclusivity clause included in Trawood's lease with A/H; however, this is not what is required by that provision.

The court, when considering the language of a covenant, may not enlarge or extend its meaning and scope "beyond that clearly indicated by its language and shown to have been intended by the parties." *Bookman v. Cavalier Court*, 198 Va. 183 (citing 51 C.J.S., *Landlord and Tenant*, § 238, p. 865). The exclusivity provision in Trawood's lease *only* prohibits other retailers whose

"*primary* use would be directly competitive with the carry-out and delivery portion of Tenant's business." (Emphasis added.) Plaintiff would have this court find A/H in breach of their contract for leasing to a business that simply competes with Little Caesar's because it sells the same type of food that Little Caesar's does. This, however, is simply not what the exclusivity clause in Trawood's contract calls for. Plaintiff has made it clear to the court that they wanted a much more prohibitive clause in their lease; this is evidenced by the original proposal of Trawood that prohibited any retailer whose sale of pizza was over 10% of their gross sales. If this was, in fact, what A/H and Trawood had intended, then this is what would have been included in the lease. The current provision in the lease is much less restrictive and only prohibits just what it says, those retailers whose *primary* use would compete with delivery and carry-out, not with pizza. Purple Dawg's *primary* use is as a sit-down restaurant, not a carry-out and delivery restaurant; 60% of their business is from patrons who dine in and 40% is from those who chose delivery or carry-out. Since Purple Dawg's primary use is not directly competitive with the carry-out and delivery portion of Little Caesar's business, A/H has not breached its lease with Trawood. Therefore, Plaintiff's motion for a temporary injunction is denied and Defendants Purple Dawg and A/H's demurrers to Count I are both sustained.

Count II of Plaintiff's Bill of Complaint seeks damages from A/H for what Trawood alleges was fraud and misrepresentation on the part of defendant A/H to entice Plaintiff to enter into this contract. Because this count asserts no claim against, requests no relief from, nor affects the defendant, Purple Dawg, its demurrer to this Count will be sustained.

Regarding the count against A/H, this Court notes that for purposes of ruling on the demurrers, this court, under well established principles, must accept as true the allegations contained in Plaintiff's Motion for Judgment. *See Arlington Yellow Cab v. Transportation, Inc.*, 207 Va. 313, 319 149 S.E.2d 877 (1966). In their motion for judgment, Plaintiff alleges that A/H fraudulently induced them to enter into the lease by assuring them that none of the other retailers would provide competition for their business. In fact, Plaintiffs state in their motion for judgment that A/H deceived them by misrepresenting "the nature of the business to be conducted by Purple Dawg" when the restaurant opened. Whatever Plaintiff believed that A/H was assuring them with regard to this issue was resolved by the "exclusivity" clause that was negotiated and ultimately included in the final lease. This clause that was agreed on by both parties states only that A/H would not lease to a retailer whose "primary use would be directly competitive with the carry-out and delivery portion of Tenant's business." Trawood cannot now claim

that they were fraudulently induced to enter into a contract with A/H, based on the nature of Purple Dawg's business and competition with them, when Purple Dawg's business does not fall into this specific prohibition.

Furthermore, the contract, in ¶ 65, states that "no representations, understandings, or agreements have been made or relied upon in the making of this Lease other than those specifically set forth herein." Both parties to this contract are skilled and sophisticated businesses and entities, and they signed the lease with this provision included therein. As a result of this, Trawood cannot now claim to have relied on representations supposedly made to them but not included in the contract.

Finally, it is well settled that "an action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Blair Const., Inc. v. Randy Weatherford, t/a W. S. Const.*, 253 Va. 343 (1997) (quoting *Lloyd v. Smith*, 150 Va. 132, 145 (1928)). Furthermore, the Virginia Supreme Court has stated, "were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." *Id.* In the present case, what Plaintiff alleges was part of this "fraudulent inducement" was a statement made regarding a future event. Because this statement was regarding a future event, it cannot be the basis for a fraud cause of action. In light of the foregoing, Defendant A/H's demurrer to Count II will also be sustained.

The Clerk of the Court is directed to send certified copies of this order to Stephen L. Pettler, Jr., Esq., Counsel for Plaintiff; J. Gray Lawrence, Esq., Counsel for Defendant, A/H Port Crossing Associates, L.L.C.; and Timothy E. Cupp, Esq., Counsel for Defendant, Purple Dawg.